Leroy MORGAN, Commissioner of the Kentucky Department of Insurance; Kentucky Department of Insurance; Frederic J. Cowan, Attorney General of Kentucky; Consumer Protection Division of the Kentucky Department of Law, Appellants,

v.

BLUE CROSS AND BLUE SHIELD OF KENTUCKY, INC., a Mutual Insurance Company; Leroy Morgan, Commissioner of the Kentucky Department of Insurance; Kentucky Department of Insurance, Appellees.

Nos. 89–SC–146–TG, 89–SC–152–TG.

Supreme Court of Kentucky.

Dec. 21, 1989.

As Modified on Denial of Rehearing April 26, 1990.

Patrick Watts, Dept. of Ins., Frankfort, for appellant Com'r of Ins.

Frederic J. Cowan, Atty. Gen., Nora K. McCormick, Director, Consumer Protection Div., Everett Hoffman, Asst. Atty. Gen., Consumer Protection Div., Frankfort, for appellant Atty. Gen. of Kentucky.

Craig H. Reynolds, Gen. Counsel, Blue Cross & Blue Shield, Louisville, Sam G. McNamara, D. Paul Alagia, Jr., Dandridge F. Walton, Frankfort, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a judgment of the Franklin Circuit Court which reversed an order of the Commissioner of the Kentucky Department of Insurance which had disapproved certain rate filings submitted by Blue Cross and Blue Shield of Kentucky, Inc. on three direct-pay lines of health insurance. The circuit court judgment also dismissed a counterclaim by the Kentucky Attorney General which sought to have the rate filings disapproved on other grounds.

More than 46,000 families were affected by the rate filings: 10,314 in conversion coverage; 29,225 in farm bureau and 6,480 in nongroup. These policyholders are those without the opportunity for group coverage through an employer, union or other association to bargain and pay premiums on their behalf. These subscribers consist largely of small business people, family farmers, early retirees, unemployed individuals, those who lost coverage due to divorce or death of a spouse and single parents working at low-paying or part-time jobs. In conjunction with the over-all increases, Blue Cross also sought to implement demographic ratings in the farm bureau and nongroup coverages. The result was that policyholders in the age categories from 60 to 64 faced rate increases of approximately 80 percent.

The Commissioner of Insurance ordered public hearings but announced that the hearings would be held under KRS 304.12–130. The hearing officer received testimony from actuarial experts, complaints of consumers, etc., and determined by final order that the increase of approximately 40 percent for three lines of coverage was an unfair practice and not in the public interest in violation of KRS 304.12–130. The Commissioner also found that Blue Cross had failed to carry its burden concerning the filings by failing to provide complete information on its operating expenses pursuant to 806 KAR 17:070 Sec. 4(2)(b)(5). At least part of this failure can be attributed to the fact that the Commissioner failed to comply with the statutory requirements contained in 304.12–130—viz., "(1) If the Commissioner believes that any person engaged in the insurance business is engaging in this state in any method of competition or in any act or practice in the conduct of such business which is not defined in this subtitle but that such method of competition is unfair, deceptive or not in the public interest, or that such act or practice is unfair or deceptive and that a proceeding by him in respect thereto would be in the public interest, he shall, after a hearing of which *notice of the hearing* and of the *charges against him* are given such person, make a written report of his findings relative to such charges and serve a copy thereon upon such person and any intervenor at the hearing." This was not done, and will be discussed later in the opinion.

The Commissioner ordered Blue Cross to cease the implementation of its rate increases and to refund premiums collected because of the increases. It should be further noted that KRS 304.12–130 makes no provision for refund of premiums collected.

Blue Cross appealed to the Franklin Circuit Court, which set aside an order of the Commissioner and stated that the action of the Commissioner was in excess of the statutory power of the Commissioner. This appeal followed.

Blue Cross provides health care coverage for approximately 539,000 policyholders in

Kentucky representing over 1,125,000 persons by various policies and is Kentucky's largest provider of health care insurance with approximately 30 percent of the market. Blue Cross has a very large number of subscribers in the 60–64 age group. As people age, they use proportionately more medical services thereby causing the insurer to be responsible for ever increasing outlays of funds to provide such services. Blue Cross made a decision, at the corporate level, to change their rate structure to one of actuarially sound demographic based computations. In the past several years, Blue Cross has implemented the age/sex ratings so as to reduce the over-all average age. The current request would cause the average age to fall into the 40's which would in the company's opinion stabilize their business. In the past several years, Blue Cross has lost in excess of $6 million on lines of insurance provided to the elderly. Their reserves have been reduced from $189 million to $100 million. Unfortunately the older consumer of health care with health problems has no other feasible source of health insurance. In some cases they must pay the 81 percent increase or abandon their coverage during the time of their life when health care is most important.

The company, the Department of Insurance and the public all have a significant stake in the cost and availability of health insurance.

■ The judgment of the circuit court that the trade practice provisions of the Kentucky Insurance Code do not apply to individual health insurance rate filings is erroneous, and is reversed. The General Assembly has not exempted rate filings from the trade practices act in regard to individual health insurance rate filings, nor provided in KRS 304.12–130 that rate filings are subject to that statute. However, it is the opinion of this court that the Franklin Circuit Court was erroneous in determining that KRS 304.12–130 did not apply to individual rate filings.

The Commissioner found that the manner in which the rate increases were implemented in conjunction with the imposition of full demographic rating is unfair and not in the public interest in violation of KRS 304.12–130, without stating in what way it was unfair and not in the public interest. There is no statutory definition of the terms "unfair" and "not in the public interest" in regard to these insurance statutes, nor is there a judicial definition on the books.

KRS 304.14–130(1)(d) authorizes disapproval of individual health insurance rates if the benefits provided are unreasonable in relation to premium charge and loss ratios. The Commissioner has adopted 806 KAR 17:070 and defined reasonableness of benefits in relation to premium charge and loss ratios. The anticipated loss ratio necessary to meet the standard of reasonableness for the rate filing in question is 55 percent. 806 KAR 17:070 § 5(2). However, the guideline established by the regulation is not automatic. 806 KAR 17:070 § 4(2)(b)(5) requires a brief description of how the revised rates were determined, including a general description and source of each assumption.

The company failed to provide timely information on its cost allocation procedures, which, as we have said, is explained at least in part by the fact that the company was not notified that the hearing was proceeding under any statute which required cost allocation proceedings.

An examination of the history of the Model Act which is the basis of KRS 304.-12–130 indicates that it was intended to apply to rate filings. We are persuaded that the comments on the Uniform Act are a correct interpretation of Kentucky law in this respect. *See Couty v. Ky. Farm Bur. Mtl. Ins. Co.*, Ky., 608 S.W.2d 370 (1980).

The National Association of Insurance Commissioners which created the Model Act indicated in proceedings in 1947 that a Commissioner of Insurance is entitled to initiate a hearing to determine if any company is engaged in an unfair or deceptive practice. The Model Act which serves as the basis for the Kentucky statute assumed that such an act would apply to rate filings.

The statutes imposing general restrictions on trade practices are recognized as legitimate and necessary forms of regulation. *See Dare to be Great, Inc. v. Com. of Ky, ex rel Hancock*, Ky., 511 S.W.2d 224 (1974), in which the provisions of KRS 367.-170 prohibiting misleading business practices were found to be constitutional. The Court also determined that the language of Section 5 of the Federal Trade Commission Act [15 U.S.C. § 45(a)(1)] was comparable to Kentucky law. The general laws regulating trade practices need flexibility to deal with the variety of cases arising from the insurance business. *Cf. Dare to be Great, supra,* quoting favorably from *Federal Trade Commission v. Colgate Palmolive Co.,* 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).

In this case, the Commissioner has declared that certain business practices are unfair and not in the public interest without demonstrating in what manner they are so and without providing for a proper hearing as provided by the statute.

■ Members of the public need protection from pricing decisions made by insurance companies which are arbitrary and capricious, Ky. Const. § 2, and thereby constitute a business practice which is unfair or not in the public interest. In this case, the Commissioner established a procedure for interpreting the statutes and applying those statutes to the facts presented at hearings before the Commissioner. The Commission's consulting actuary found that it was advisable to initiate demographic ratings in steps because of the harsh impact that a change to full demographic ratings would have on older subscribers. Blue Cross did not rebut the evidence presented by the commission actuary.

■ At a proper hearing, the Commissioner of Insurance may reject an individual health insurance rate filing because the company failed to include sufficient information on its expense provisions when the need for further information was supported by uncontroverted expert testimony. The circuit court's finding was also clearly erroneous in holding that the Commissioner's requirement for additional information on operating expenses was a ruse. The demand for additional information was made to assure the subscribers that they are bearing their own expenses and not the costs attributable to other persons. If policyholders are required to pay these expenses, they are entitled to know the basis of the charges. The Commissioner of Insurance may refuse to approve a rate filing pursuant to KRS 304.14–130(1)(d) if the benefits provided under the form are not reasonable in relation to the premium charged. 806 KAR 17:070 § 4(2)(b)(5) requires a brief description of how the revised rates were determined, including a general description and source for each assumption used. Expense assumptions must include the percent of premium, dollars per policy or dollars per unit of benefit as separate items. The consulting actuary for the Department of Insurance and the Intervenor's consultant indicated a large increase in expense provisions from prior filings. Blue Cross refused to provide any additional information and argued that it was unnecessary. It is critical to have information on how operating expenses are allocated because subscribers should have to bear only the expense generated by their coverage, not other expenses. If policyholders are bearing expenses other than their own, the question becomes one of unfair discrimination pursuant to KRS 304.12–080(3). Advertising expense is an example of the kind of charges that needed to be explained. If the Commissioner cannot obtain answers to such questions it is within the scope of his authority to conclude that a filing sufficient for him to determine whether the benefits are reasonable in relation to the premium has not been made and to disapprove the policy forms on that ground. The Commissioner need not blindly follow the loss-ratio requirements of 806 KAR 17:070 § 5(1)(a). It is not an irrebuttable presumption; it is only one factor. It is subject to further proof. It is the Commissioner's right to challenge the assumptions made in the filings when the company does not provide information on the allocation methodology of its operating expenses. 806 KAR 17:070 § 4(2)(b)(5).

The Commissioner was not equating forms with rates. If the Commissioner is not satisfied with a rate filing, the form with which those rates are used may be disapproved. Consequently, the Commissioner acted within his authority pursuant to KRS 304.14–130(1)(d) and 806 KAR 17:070.

The movant has the burden of proof, including the burden of persuasion in administrative proceedings. Section 556(d) of the Administrative Procedures Act. McCormick on Evidence, 3rd Ed. p. 1023 (1984); *Lee v. International Harvester Co.*, Ky., 373 S.W.2d 418 (1963).

■ The statutory authority of KRS 304.2–340(1) to request evidence does not compel the department to issue subpoenas or take legal action to secure data upon which the movant relies for proof. We are persuaded by the Tennessee decision which holds that an insurance company seeking an increased rate has the burden of proof which never shifts. *Pack v. Royal Globe Ins. Co.*, 224 Tenn. 452, 457 S.W.2d 19 (1970). There were relevant questions concerning the rate increases and the company's change to demographic considerations in presenting those rates. The company must provide documentation of the fairness and reasonableness of its request. There is no presumption that a rate filing is correct, fair or reasonable. *See In re: North Carolina Fire Ins. Rating Bur.* 275 N.C. 15, 165 S.E.2d 207 (1969).

The Administrative Board which needs information has no responsibility to seek out evidence that should be provided as part of the movant's request. An applicant for benefits has the burden of proof. *Energy Regulatory Com. v. Ky. Power*, Ky., 605 S.W.2d 46 (1980). The burden of proof is on the proponent of an issue. 73A C.J.S. § 128.

■ It is the holding of this Court that the Insurance Commissioner has authority to disapprove *any* form filed under KRS 304.14–120 as to individual health insurance if the benefits provided are unreasonable in relation to the premium charged. KRS 304.14–130(1)(d). If the Commissioner believes that any business practice, including

filed premium rates, is not in the public interest or otherwise denounced by KRS 304.12–130, he must give specific notice of the charges to the offending company and hold or continue a hearing and otherwise comply with KRS 304.12–130.

The judgment of the circuit court is reversed and this matter is remanded to the Franklin Circuit Court for the purpose of directing the Insurance Commissioner to issue notice pursuant to KRS 304.12–130 of the specific charges thereunder against the appellees, and to hold a *de novo* hearing on these charges, providing the appellees with an opportunity to answer said charges.

STEPHENS, C.J., and COMBS, LAMBERT and LEIBSON, JJ., concur.

GANT, J., dissents by separate opinion in which VANCE, J., joins.

VANCE, J., dissents by separate opinion in which GANT, J., joins.

GANT, Justice, dissenting.

The majority opinion herein almost completely ignores the law and the facts of this case, and I feel compelled to dissent. Blue Cross and Blue Shield of Kentucky, Inc. is a domestic mutual health insurance company subject to the provisions of KRS 304.24–010, *et seq.* and KRS 304.17–380. The latter statute controls rate filings and specifically states:

> Each insurer issuing health insurance policies for delivery in this state shall, before use thereof, file with the commissioner its premium rates and classification of risks pertaining to such policies. The insurer shall adhere to its rates and classifications as filed with the commissioner. The insurer may change such filings from time to time as it deems proper.

Under this provision, mutual health companies must file their premium rates and classifications only before the use thereof, and there is no statutory provision which allows the commissioner to review and approve or disapprove rate schedules.

Faced with this fact, the commissioner sought to rely on KRS 304.14–130, which

statute pertains *only* to policy forms. This statute reads:

(1) The commissioner shall disapprove any form filed under KRS 304.14–120 or withdraw any previous approval thereof, only on one or more of the following grounds:

\*     \*     \*     \*     \*     \*

(d) As to an individual health insurance policy, if the benefits provided therein are unreasonable in relation to the premium charged.

Pursuant to this narrowly granted authority to approve policy forms, a regulation was enacted to define the phrase "reasonableness of benefits in relation to the premium charged," viz. 806 KAR 17:070. Section (5) provides:

(2) Benefits shall be deemed reasonable in relation to the premium charged provided both the following loss ratios meet the above standards for new forms.

The regulation sets out the method of calculating anticipated loss ratios. Under 806 KAR 17.070, Section 5(1), 55% is the anticipated loss ratio for the proposed rate to meet the standard of reasonableness. In other words, if for every dollar of premium collected, 55 cents is paid back out in benefits, the "benefits shall be deemed reasonable in relation to premiums" and the form shall be approved.

The majority opinion ignores the plain language of 806 KAR 17:070, Section 2(b), which sets out the information to be filed, as follows:

(1) Brief description of the type of policy, benefits, renewability, general marketing method, issue age limits ... and the anticipated loss ratios of its original rates.

\*     \*     \*     \*     \*     \*

(5) Brief description of how revised rates were determined, including the general description and source of each assumption used.

The appellee herein, Blue Cross and Blue Shield of Kentucky, Inc., followed the regulation and filed its premium rates for three policyholder classifications. These applications showed, respectively, an 83.1% anticipated loss ratio and an 87.4% anticipated loss ratio, each being far in excess of the mandated 55% loss ratio test.

A public hearing was called, the notice identifying only the 55% loss ratio test as the subject of the hearing. Hearings were conducted, and all the testifying actuaries, including one actuary provided by the intervenor herein—the Office of the Attorney General—testified that the loss ratios anticipated were well in excess of 55% and averaged approximately 85%. There was no evidence from any source at these hearings to refute this testimony.

The commissioner issued his Findings of Fact, Conclusions of Law and Order disapproving all three rate findings, and gave two reasons. First, he held that the filings constituted "unfair trade practices" under KRS 304.12–130. Second, he found that Blue Cross and Blue Shield of Kentucky, Inc. had failed to provide adequate information on its cost allocation procedures.

There are basically two things wrong with this Order. First, KRS 304.12–130 has nothing to do with "fair trade practices," which are not mentioned in the statute. This statute, as set out before, relates only to the relation of benefits to the premium charged. The "fair trade practice" connotation had never been mentioned in any hearing, notice, or previous dealings with the commission or the hearing officer.

Second, the denial based on inadequate information is what the circuit judge, in reversing the commissioner, denominated "something of a ruse." The regulations herein quoted from 806 KAR 17:070 call for a brief description as set out in the portions quoted above. These conditions were complied with, the filing for each class being approximately 32 pages in length. Also, Blue Cross and Blue Shield of Kentucky, Inc. provided all additional information requested by the hearing officer or the commissioner, and an examination of the record discloses all that information was available to both the commissioner and the intervenor. The commissioner's Order at no point identified any record request for

information with which Blue Cross and Blue Shield did not comply.

I would affirm the Franklin Circuit Court, which held that (1) KRS 304.17–380 does not give the commissioner the authority to disapprove rates; (2) KRS 304.14–130 expressly and specifically states the only grounds, which were ignored by the commissioner, for disapproval of policy forms; (3) no unfair trade practices prohibited in KRS 304.12–130 were even mentioned at the hearings, and there is no evidence of any intent by the legislature to include unfair trade practices under this subtitle, and, (4) the record reveals that all information was provided by Blue Cross and Blue Shield of Kentucky, Inc.

I would affirm the Franklin Circuit Court.

VANCE, J., joins in this dissent.

VANCE, Justice, dissenting.

We live in a time when medical costs seem to many of us to be completely out of control. We must realize, however, that when health insurance premiums rise at a phenomenal rate they simply reflect the fact that physician and hospital charges are rising at a phenomenal rate. Health insurance companies are business enterprises, and unlike the federal government they cannot continue to exist when they pay out more than they take in.

In matters involving premiums charged by a health insurer, the important consideration for the insurance commissioner should be whether the proposed rate is reasonable. K.R.S. 304.14–130(1)(d) dictates that the amount of premium charged in relation to the benefits provided by the policy shall be the basis for the determination of the reasonableness of the premium. When benefit payments are equal to or greater than 55% of the premium charged, it is considered by the Department, under regulations promulgated by it, that the premium is deemed to be reasonable.

The proof at the hearing before the commissioner was that the anticipated payment of benefits under the rates proposed by Blue Cross and Blue Shield of Kentucky would equal approximately 85% of the premiums collected, far in excess of the 55% standard for reasonableness set forth in the Department's regulations. After the payment of anticipated benefits, only 15% of each premium dollar collected would remain for the payment of overhead and administrative expenses.

There was absolutely no evidence at the hearing to indicate that the proposed rates were unreasonable in the relationship of benefits paid to the premium charged. The commissioner concedes that fact.

The commissioner rejected the proposed rates by applying Section 12 of the insurance code. Section 12 relates to unfair methods of competition and unfair and deceptive practices in the insurance business. Various subsections of Section 12 relate to such matters as false and misleading advertising, false financial statements, advertisement of assets and liabilities, and proscriptions against defamation, boycotts, intimidation, discrimination, rebates, and illegal inducements by an insurer.

None of the proscribed unfair practices even remotely refer to rates, and the trial court correctly held that Section 12 does not apply to rate proposals.

K.R.S. Section 304.12–130 does authorize the commissioner to give notice and hold hearings on any other method of competition or practices which he considers to be unfair, deceptive, or not in the public interest. Under this section, but without the required notice of the specific charge to Blue Cross and Blue Shield, the commissioner determined that the "full implementation of the demographic rates" occurring at a time when a general rate increase was requested, amounted to an unfair trade practice.

In a prior hearing, Blue Cross and Blue Shield, as well as its major competitors, were allowed to classify its policyholders according to age and sex. Policyholders were divided into age classifications, encompassing ten-year periods, instead of all policyholders, regardless of age, being in the same classification. The premium rates for each classification thereafter were based upon the amount of benefits

paid to the members of that class. Because experience has shown that older people generally require much more medical services than younger persons, the premium charge was necessarily higher for those in the older classification than for those in the younger classification. As a practical matter, people in the oldest classification paid significantly more, and those in the younger classification paid less, than when all subscribers were in the same classification. This is simply the nature of insurance in general. The risk of loss is spread evenly among all the members of the same classification.

The phrase, "full implementation of demographic rates" used by the commissioner as a basis for his finding of an unfair trade practice is in itself a misleading and deceptive phrase. Its meaning is not clear. It ought to mean the implementation of the maximum, or the full rate in each demographic classification, which would yet be reasonable under the Department regulations, namely, a return which would result in a payment of 55% of each premium dollar as benefits to policyholders. Obviously, the Blue Cross and Blue Shield proposal is not a full implementation of the demographic rate because its proposal is to pay out 85% of premium dollars in benefits. Under the Department's regulations, much higher rates than those proposed by Blue Cross and Blue Shield would, nevertheless, be deemed to be reasonable.

In my view, a rate which pays out in policy benefits 30% more of each premium dollar than is required by Department regulations, is, as a matter of law, a reasonable rate, and the implementation of such a rate cannot constitute an unfair trade practice. If a proposed rate for a particular demographic classification which has been approved by the Department is necessary to cover the costs generated by the members of that classification, the rate, though it may seem oppressive and harsh in its consequences, is nevertheless not an unfair rate. Any unfairness which may exist in this matter lies in the demographic classifications which have been approved by the Department, and not in the rates which are necessary to pay the benefits in each classification.

As I noted earlier, Blue Cross and Blue Shield formerly included all of its policyholders in one classification. The breakup of policyholders into narrow ten-year age classifications has resulted in the necessity of a huge increase in the premiums for those persons in the 50–60 year age classification, and for those 60 and older.

The commissioner has concluded that the increase in premiums should have been phased in gradually rather than abruptly. This could have been accomplished by a more gradual narrowing of the demographic age categories, but as the dissenting opinion of Justice Gant points out, the demographic classifications were suggested by the Department and approved by it in previous years. A similar classification has been approved for other health insurance companies which compete with Blue Cross and Blue Shield. The denial to one company of the use of a demographic classification for rate purposes which has been allowed to other companies, might very well constitute an unfair trade practice in itself.

I cannot fail to recognize the fact that spiraling costs have placed adequate health care insurance beyond the reach of many in our society and have caused great hardship to many others. Yet, I cannot ignore the fact that to continue in business, the premium charged by a health insurance company must be sufficient to meet the benefits provided by the policies it issues. A fair interpretation of the insurance code compels me to affirm the decision of the trial court.

GANT, J., joins in this dissenting opinion.