MARINA MANAGEMENT SERVICES, INC., State Dock, Inc., and Barnes Marina Holding Company, Inc. d/b/a Kentucky Dam Marina, Movants,

and

Green River Associates d/b/a Green River Marina and BARREN RIVER MARINA, Movants/Intervening Plaintiffs,

v.

COMMONWEALTH OF KENTUCKY, CABINET FOR TOURISM, Department of Parks, and Legislative Program Review and Investigation Committee, Respondents.

No. 95–SC–66–I.

Supreme Court of Kentucky.

May 11, 1995.

Rehearing Denied Oct. 19, 1995.

Jackson W. White, Denise H. McClelland, Frost & Jacobs, Lexington, for movants.

Sarah Hernandez, Gen. Counsel, Tourism Cabinet, Frankfort, H. John Schaaf, Gen. Counsel, Legislative Research Com'n, Alice Hobson, Legislative Research Com'n, Frankfort, for respondents.

STEPHENS, Chief Justice.

This case questions the scope of the exemption contained in KRS 61.878(1)(c) of the Kentucky Open Records Act, addressing whether it applies to a situation where confidential audited financial reports of a privately owned corporation have been submitted to a public agency pursuant to a license agreement with the State. Also at issue is the effect of KRS 61.878(5) on this fact situation and whether it effectively denies the privately owned corporation the ability to claim exempt status.

The Franklin Circuit Court dissolved a restraining order which prohibited the Cabinet for Tourism from delivering to the Legislative Program Review and Investigation

Committee (LPRIC) audited financial statements of Marina Management Services (MMS). The financial reports are in the possession of Tourism pursuant to a License Agreement between MMS and Tourism.[1] The agreement between the parties requires that rent be paid in the form of a percentage of gross receipts that range from 5–12% depending upon the various categories for food and gas sales. The agreement requires that in order to determine the rental amount owed, MMS must submit a copy of an audit of its books and accounts no later than 3½ months after the end of MMS' fiscal year.

By dissolving the restraining order, the Franklin Circuit Court enabled LPRIC, within the parameters of its own discretion and policy, to disclose not only the information pertinent to determining the amount of rent due to the Commonwealth, but all other financial information available in the audited reports.

On appeal, the Court of Appeals upheld the trial court, holding that the audited reports were not exempt from disclosure under the Kentucky Open Records Act.

■ After reviewing the statutes, we believe the records in question are exempt from disclosure under the Open Records Act. The pertinent exemption reads as follows:

The following public records are excluded from application of KRS 61.870 to 61.884 [The Open Records Act] and shall be subject to inspection only upon order of a court of competent jurisdiction....

....

(c)1 Upon and after July 15, 1992, records confidentially disclosed to it, generally recognized as confidential or proprietary, which if openly disclosed would permit an unfair commercial advantage to competitors of the entity that disclosed the records....

KRS 61.878(1)(c)(1).

The records submitted to the Parks Department include information on asset values, notes payable, rental amounts on houseboats, related party transactions, profit margins, net earnings, and capital income. These are records of privately owned marina operators, disclosure of which would unfairly advantage competing operators. The most obvious disadvantage may be the ability to ascertain the economic status of the entities without the hurdles systematically associated with acquisition of such information about privately owned organizations. Further, the facts on the record indicate that the audit statements were disclosed confidentially to Tourism and the Auditor's Office. On these facts alone, the exemption clearly applies.

LPRIC, however, argues that it is in need of these records to perform its functional purpose, and that the language of subsection (5) to this provision ensures that these records can be obtained by LPRIC. KRS 61.878(5). This Court is not attempting to defeat the purpose of LPRIC's need for the records.

LPRIC, which is a statutorily created legislative committee, is designed to "[m]ake studies of the operations of state agencies" to ensure that "the programs and activities are being operated efficiently, [and] effectively" or to determine "[w]hether there is a need for change in any authorized activity or program." KRS 6.910. The legislature recognized that LPRIC may be in need of confidential documents to perform its function by stating that "information supplied at the request of the committee or its staff ... may be classified as confidential by the public agency and not subject to release under KRS 61.872." Id. The facts on this record indicate that Tourism has and will continue to classify these documents as confidential.

As a result, it is difficult for this Court to agree with the contention that the need for these records outweighs the protections instilled by the legislature by passing the specific statutory exemption under which these records fall. The legislature itself recognizes that the purposes of the Committee can still be achieved without requiring disclosure of documents deemed confidential, not only by

1. Other marina operators, who also have submitted financial reports for this purpose include Kentucky Dam Marina, Green River Associates, and Barren River Marina. These operators are also parties to this action. For the purpose of brevity, when we refer to MMS, we are referring to all parties.

the company whose financial data is in question, but also by the public agency in possession of those documents. The statutory scheme creating the committee provides the means by which these documents can be utilized, and this is the method that should be utilized, thereby protecting the interests of all parties involved and maintaining the legislative intent behind both the LPRIC statutes and the Open Records Act.

 As a result, we hold that these records do qualify for exempt status under KRS 61.878(1)(c)(1). LPRIC may not obtain them under the Open Records Act and may not disclose any information already obtained from those reports. However, LPRIC, if it chooses to do so, may obtain access to these documents for its use in evaluation pursuant to KRS 6.910. These records, however, have been classified confidential and may not be disclosed to the public.

As a result of the foregoing, this Court orders that an injunction be entered, prohibiting LPRIC from obtaining and disclosing the records requested pursuant to the Open Records Act.

LAMBERT, REYNOLDS, STUMBO, JJ., and Special Justice SCOTT FURKIN, concur.

WINTERSHEIMER, J., files a dissenting opinion which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the movants have failed to demonstrate that they would suffer any injury if the audits retain their classification as open records. There is no extraordinary cause or reason to disturb the order of the Court of Appeals and the decision of the Franklin Circuit Court to deny exempt status to the audit of the State park marinas.

This is essentially an open records case in which the Franklin Circuit Court held that the audits of the State park marinas are not confidential or proprietary, and their disclosure would not give an unfair commercial advantage to competitors. The audits are subject to public disclosure pursuant to the Open Records Act, and the Court of Appeals

properly denied the request for CR 65.07 relief. This case comes to the Supreme Court under the provisions of CR 65.09 which carries with it a requirement that extraordinary cause be shown in order to overrule the decision of the Court of Appeals.

Initially, we must observe that the Open Records Act itself states that exemptions from disclosure pursuant to KRS 61.878 must be strictly construed even though a free and open examination may cause inconvenience or embarrassment to public officials or others. *University of Kentucky v. Courier-Journal,* Ky., 830 S.W.2d 373 (1992).

This case involves the annual audits of state facilities which are filed with the Department of Parks pursuant to the requirements of 304 KAR 1:010 and individual contracts which do not mention confidentiality or nondisclosure of the audits. The information contained in the audits is very similar to that which appears in the annual report of any publicly held corporations.

The movants have failed to show that they would suffer any injury if the audits keep their classification as open records. The particular audit reports have been classified as open records since May 14, 1991, pursuant to an Attorney General's opinion rendered at that time. OAG 91–72. The Attorney General determined that because a portion of the receipts for the marinas are from public funds and the mandatory audits are in the custody of the Department of Parks, the audits are open records. OAG 91–72 was never appealed and consequently has had the force and effect of law for over three years. KRS 61.880(5). The Court of Appeals and the Franklin Circuit Court reached the same conclusion as the Attorney General.

Here the movants have not identified any irreparable or immediate injury that they will suffer unless this Court changes the classification of the audits and enjoins their disclosure. In a similar case involving a temporary injunction, this Court held that the remote possibility of some feared wrong in the future or the mere allegation of irreparable injury is insufficient to justify extraordinary relief. *Commonwealth ex rel. Cowan v. Wilkinson,* Ky., 828 S.W.2d 610 (1992).

The allegations in this case are reminiscent of those presented at that time.

Here, the movants are the operators of four of the largest marinas in the State park system. The facilities are leased to the movants who manage them on behalf of the State under exclusive nonbid, long term contracts with the Commonwealth, some of which run well into the next century. They have no competition for the continued operation of the marinas. Although the audit reports have been available to the general public since 1991, there is no evidence that any competing marina has used this information, or could use the information, to the detriment of the movants. The only documents that support the necessity for secrecy are found in the statements of the accountants for the marinas who speculate that public disclosure "could be injurious."

In considering an open records case, we must abide by the admonition that a case by case approach be used in judicial review of agency actions and that the agency be required to sustain its actions by proof. *Kentucky Bd. of Examiners of Psychologists v. Courier–Journal*, Ky., 826 S.W.2d 324 (1992). The license agreement under which the movants operate requires them to keep complete and accurate financial records and to provide for inspection or audit. The annual audit allows the Department of Parks to evaluate the records and operation of the businesses as well as verifying the payments made to the State. The licensing agreements do not contain any language suggesting a privacy concern. There is nothing in the administrative regulations which would exempt these audits from disclosure. Two of the movants have renegotiated and extended their licensing agreement since 1991 when the audits were legally classified by the Attorney General as open records. In renegotiating their contracts they did not include any reference to confidentiality, trade secrets or open record provisions.

Eight state park marinas are managed by private operators while seven others are operated by the Department of Parks. The state-operated marinas are subject to audit by the Auditor of Public Accounts, and those audits are open records. KRS 43.090(1). If audits of the state-operated marinas have always been classified as open records, it would appear reasonable that the private operators would understand that the audits of their state-licensed marinas would also be similarly classified. There is no reasonable expectation on the part of the marina owners that the audits would be exempt from public disclosure.

In order to protect trade secrets, the specifications for bid contracts, as well as nonbid agreements such as this, should be complete and very detailed so as to avoid the necessity of the disclosure of any possible trade secrets. However, the veil of secrecy should not mask the right of the public to ascertain pertinent facts.

As the Attorney General so correctly stated in OAG 91–72

> A contractor with a governmental entity must accept certain necessary consequences of involvement in public affairs.

Currently, there is a trend in government toward the privatization of various services which have been traditionally performed in the public sector. It is thought that in many cases privatization would improve the efficiency, economy and delivery of services. However, it would be unfortunate that this worthwhile development might be tainted by the cloak of secrecy. It would be unfortunate if by contracting out any service, information which had been available to citizens and taxpayers could be hidden from public scrutiny. The result would be an absence of public oversight of both the private contractor and the public official who awarded such private contracts. When public funds are involved in any way, the public has an absolute right to expect that clear and open accountability be maintained.

The Court of Appeals was correct in affirming the decision of the Franklin Circuit Court because that court did not abuse its discretion when it denied injunctive relief to the movants. *Maupin v. Stansbury*, Ky. App., 575 S.W.2d 695 (1978). Pursuant to CR 65.09, there is no extraordinary cause requiring this Court to vacate or modify the order of the Court of Appeals denying relief.

I would affirm the decision of the Court of Appeals and reinstate the judgment of the Franklin Circuit Court.

SPAIN, J., joins in this dissent.