SOUTHEASTERN UNITED
MEDIGROUP, INC.,
Appellant,

v.

Honorable John J. HUGHES, in his official capacity as Hearing Officer of the Kentucky Department of Insurance, Commissioner George Nichols, in his official capacity of Commissioner of the Kentucky Department of Insurance, A.B. Chandler, III, Attorney General and Sheriall A. Cunningham, Appellees.

No. 96–SC–846–DG.

Supreme Court of Kentucky.

Sept. 4, 1997.

Bruce F. Clark, Robert Michael Connolly, Judith A. Villines, Stites & Harbison, Frankfort, for Appellant.

Barbara R. Hartung, Holland N. McTyeire, V, Vickie Yates Brown, Greenebaum, Doll & McDonald, Louisville, for amicus curiae American Association of Health Plans, Inc., Health Insurance Association of America, Inc., and Health Maintenance Organization Association of Kentucky, Inc.

Suetta W. Dickinson, Anna R. Gwinn, Kentucky Department of Insurance, Frankfort, Patsey Ely Yewell, Fayette County Attorney's Office, Lexington, A.B. Chandler, III, Attorney General, Office of Attorney General, Morgan G. Ransdell, Scott White, Assistant Attorney General, Frankfort, for Appellees.

THOMAS P. LEWIS, Special Justice.

This case presents a matter of first impression under Health Care legislation enacted by the General Assembly in 1994 and 1996, specifically HB 250, 1994 Ky. Acts Chapter 512, and SB 343, 1996 Ky. Acts Chapter 371. Section 16 of SB 343 adds a new section, KRS 304.17A–095, requiring each insurer of any health benefit plan to file its rates with the Commissioner of the Department of Insurance. It establishes time limits within which the Commissioner may approve or disapprove a rate filing, or order a hearing. If a filing contains an average rate increase that exceeds the increase in the medical care consumer price index for the urban South, plus 3%, the Commissioner is directed to hold a hearing within specified time limits. He is further directed in advance of the hearing to notify the Attorney General, who "shall participate as a health insurance consumer intervenor and be considered a party to the hearing."

When Southeastern United Medigroup, Inc. (SUMI) filed rate applications that triggered a mandatory hearing, the Attorney General and Department of Insurance sought extensive additional information from SUMI

through prehearing discovery. Claiming that much of the information was of a confidential and proprietary nature, SUMI filed a motion with the hearing officer asking that proprietary information be held confidential by the Attorney General and Department of Insurance, and that the hearing be closed when necessary to protect the information from public disclosure, "including of course, SUMI's competitors." After a hearing on this motion, the hearing officer entered a written order identifying a list of documents that all parties and their attorneys should treat as confidential. In his opinion, the Hearing Officer observed:

> ... the AG admits that this information in question was previously, that is prior to Senate Bill 343, considered confidential. He argues that the requirement of a public hearing in Senate Bill 343 necessitates the disclosure of the information. Yet, there is no authority cited that changes the terms of KRS 61.878 or KRS 302.2–150(3).

The Attorney General immediately filed a petition for a writ of prohibition and a motion for interlocutory relief in Franklin Circuit Court. Sheriall Cunningham, a policyholder, joined the petition and motion, but was not represented by independent counsel. The court treated the Attorney General's petition and motion in part as a request for a writ of prohibition and in part as a request for a writ of mandamus. Drawing on *Tipton v. Commonwealth*, Ky.App., 770 S.W.2d 239 (1989), and *Foster v. Overstreet*, Ky., 905 S.W.2d 504 (1995), the court found that the Attorney General had failed to meet the standards prerequisite to the granting of either extraordinary writ. Specifically, the Court found that petitioners had not shown that they will suffer great injustice or irreparable injury because of the Hearing Officer's Order or its enforcement, and that their remedy of appeal is inadequate.

After an appeal of the Circuit Court's Order, but before plenary consideration by the Court of Appeals, SUMI and the Attorney General each filed a Notice of Position with the Court of Appeals. In its Notice, SUMI said it would seek confidential treatment only of its tax returns, trial balances, and information that relates specifically to its fee schedule for physicians, its hospital contracts, and its cost containment savings. The Attorney General's Notice withdrew any contention that year ending trial balances and tax returns should be disclosed to the Department of Insurance or the public.

The Court of Appeals reversed the Circuit Court's Order and remanded "for issuance of a writ prohibiting the Insurance Commission's hearing officer from denying public access to any information submitted in support of [SUMI's] request for a rate change except as provided herein." The only exceptions recognized by the court were copies of trial balances and tax returns. The Court of Appeals based its ruling on its interpretation of Sections 15 and 16 of Senate Bill 343, and KRS 304.2–150(3). The court found in this legislation a demonstrated determination by the General Assembly to create a "more open process" for modifying insurance rates, saying that "SB 343 in particular sets forth a presumption that materials related to insurance rate increases are subject to disclosure." Accordingly, it ruled that "any exceptions to public disclosure of rate filing information must be justified by findings setting forth compelling reasons for confidentiality." After reviewing the transcript of the hearing, the Court said "we are convinced that the evidence offered by SUMI ... did not overcome the statutory presumption of openness and disclosure."

We granted review to consider the standards and methodology that should apply when a hearing officer determines whether some information submitted by a health care insurer in support of rate filings may be accorded confidential treatment. We note at the outset that all parties and the Court of Appeals agree that not all such information is subject to public disclosure. From our review of governing legislation it is evident that the General Assembly has recognized and provided for the confidential treatment of certain information when submitted by a regulated entity, including regulated health care insurers.

■ KRS Chapter 13B, enacted in 1994 and amended in part in 1996, governs administrative hearings, with certain exceptions, and applies to Department of Insurance rate

hearings. KRS 13B.080(8) provides that an "administrative hearing shall be open to the public unless specifically closed pursuant to a provision of the law." An amendment to Chapter 13B, enacted in 1996 and codified as KRS 13B.090(3), provides:

> ... To the extent required by due process, the hearing officer may order the inspection of any records excluded from the application of KRS 61.870 and KRS 61.884 under KRS 61.878 that relate to an act, transaction, or event that is a subject of a hearing, and may order their inclusion in the record under seal.

KRS 61.878, part of the Open Records Act, provides;

> The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction....
>
> \*    \*    \*    \*    \*    \*
>
> (c) 1. Upon and after July 15, 1992, records confidentially disclosed to an agency or required by an agency to be disclosed to it, generally recognized as confidential or proprietary, which if openly disclosed would permit an unfair commercial advantage to competitors of the entity that disclosed the records.

KRS 61.878 is also incorporated by reference in KRS 304.2–150(3), legislation that long predates Health Care Reform legislation. This section provides:

> Unless otherwise provided by law, records of the department shall be open to the extent provided by the Kentucky Open Records Act, KRS 61.872 to 61.884:
>
> (a) The following records shall be open:
>
> 1. Rate and form filings and information filed in support thereof;....
>
> (b) The following records shall be closed:
>
> 1.....
>
> 2. Other records as provided by law....

Appellees and the Court of Appeals focus on subsection (a)1., above, as a declarative command isolated from its introductory clause, "to the extent provided by the Kentucky Open Records Act." The Attorney General contends that unless given independent meaning, subsection (a)1. serves no purpose. We might agree that KRS 304.2–150(3), read as an entirety, is awkwardly worded. We find it clearly more natural, however, to read the subsection, preceded by a colon, as qualified by the language that introduces it. Moreover, if subsection (a)1. is read as an unqualified command, and yet all acknowledge that exceptions exist, one may wonder what the source of exceptions might be.

■ The Court of Appeals determined that protection from disclosure could be provided if "compelling reasons" could be found. The source of this exception is said to be Senate Bill 343, with specific reference to Sections 15 and 16. Section 15 empowers the Commissioner to review insurers' rates in effect between July 15, 1995 and the effective date of the Act. It provides remedies and sanctions for rates found to be excessive. There is a single reference in this section to "a hearing," and that is in relation to the "discontinuance" of an earlier administered suspension of an insurer's certificate of authority. Section 16, as earlier noted, requires "a hearing" if an insurer's rate filing exceeds specified limits. The Attorney General is to be notified in advance of such "a hearing." An unrelated subsection empowers the Commissioner to withdraw approval of rates previously approved if they are found no longer to be reasonable after "a public hearing."

It is fair to suppose, even presumptively, that the General Assembly intended "a hearing" in Senate Bill 343 to be a public hearing. And it is evident from the designation of the Attorney General as "health insurance consumer intervenor" that the General Assembly intended for consumer interests to be represented at the hearing. Indeed, it is agreed that an affected consumer may intervene as a party to the hearing and have full access to all relevant material. But the concept of a public hearing does not altogether foreclose protection of some information, not from disclosure to the parties, but from unlimited disclosure to the public, including the regulated entity's competitors. Compare, Ky CR 26.03 and FCR 26(c), applicable to civil

trials, perhaps the most "open" and "public" of all non-criminal adjudicatory proceedings. Mere references to "a hearing" in Section 16 of Senate Bill 343 cannot reasonably be interpreted to amend or repeal statutes that address the specific issue of protected confidential or proprietary information. Cf. *Hoy v. Kentucky Industrial Revitalization Authority,* Ky., 907 S.W.2d 766 (1995).

■ KRS 61.878 provides the proper standard for judging whether in an administrative hearing some records demanded of a regulated entity may be protected from public disclosure. That statute defines such records as those "generally recognized as confidential or proprietary, which if openly disclosed would permit an unfair advantage to competitors of the entity that disclosed the records." We would add that because words and phrases such as "confidential" "proprietary," and "unfair advantage" apply with more or less strength to a variety of documents, the effect of protecting a given document from scrutiny by the public and potential intervenors should be considered in the balance. See, KRS 61.871 (exceptions to free and open examination of public records provided for in KRS 61.878 shall be "strictly construed"). Just as it may be more important to accord protection to some documents than to others, access to some documents may be more meaningful than access to others for those who wish to consider intervening. But if it is established that a document is confidential or proprietary, and that disclosure to competitors would give them substantially more than a trivial unfair advantage, the document should be protected from disclosure to those who are not parties to the proceeding.

■ Writs of prohibition and mandamus are extraordinary remedies. Each provides an avenue for interlocutory intervention by an appellate court, effecting delay in proceeding to the merits of the underlying case. In *Tipton v. Commonwealth,* Ky.App. 770 S.W.2d 239 (1989), the Court of Appeals correctly stated that a writ of prohibition should be granted only upon a showing that:

1) the lower court is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by appeal, or 2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result.[1]

These same grounds were stated by this Court to govern the issuance of a writ of mandamus in *Smith v. Shamburger,* 314 Ky. 850, 238 S.W.2d 844, 846 (1951). See also, *Foster v. Overstreet,* Ky., 905 S.W.2d 504, 505 (1995), quoting *Glasson v. Tucker,* Ky., 477 S.W.2d 168, 169 (1972).

■ The Court of Appeals discussed the standard of review that should apply when an appellate court reviews the action of a lower appellate court, categorizing the Attorney General's petition in the Circuit Court as an appeal from the order of the hearing officer. Also needing attention is the standard of review applicable in the first instance when a court is petitioned to grant a writ of prohibition or mandamus to a lower adjudicatory body. The decision to grant or deny the petition is committed to the sound discretion of the court. *Haight v. Williamson,* 833 S.W.2d 821, 823 (1992). But because discretion is also committed to the lower court or quasi-judicial administrative body in the conduct of its assignment, review of its action is appropriately limited. Where a petition for one of the extraordinary writs alleges that a lower adjudicatory body within its jurisdiction has acted incorrectly, and the threshold factors of inadequate remedy and irreparable injury are satisfied, the writ should be granted only upon a showing that the challenged action reflects an abuse of discretion. If the legitimacy of the challenged action presents only a question of law, the reviewing court may of course determine the law without necessary deference to the lower court or hearing officer. Where the challenge involves matters of fact, or application of law to facts, however, an abuse of discretion should be found only where the factual underpinning for application of an articulated legal rule is so wanting as to equal, in reality, a distortion

---

1. Among the cases from this Court that cite Tipton's formulation approvingly are *Futrell v. Sha-* *doan,* Ky., 828 S.W.2d 649, 651 (1992); *Bock v. Graves,* Ky., 804 S.W.2d 6, 9 (1991).

of the legal rule. Application of any lesser standard for interlocutory intervention would ignore the extraordinary nature of the writs of prohibition and mandamus. Cf., *Tipton v. Commonwealth, supra,* 770 S.W.2d at 242.

■■■ With respect to the documents in issue in this case review of the administrative hearing transcript discloses that only two witnesses whose testimony was subject to cross examination were called. The testimony of one of these witnesses, called by the Department of Insurance, is quite limited in scope and does not touch on the documents remaining in issue. Moreover, this testimony is ambiguous, and in part supports the position of SUMI. The testimony of the other witness, called by SUMI, relates to the documents in issue, and others, and covers the factor of unfair advantage to competitors if disclosed to them. There is no reason to question the proprietary nature of the documents in question, or SUMI's claim that it would not voluntarily share the information with its competitors, particularly in its comprehensive, compiled form. Sharper focus by knowledgeable witnesses on the factor of unfair advantage is certainly desirable. In the present case, however, there is no testimony in the hearing record that contradicts SUMI's witness on this issue.[2]

The hearing officer in this case articulated the proper legal standard governing the protection of confidential or proprietary documents and information. In the application of this standard, and at the instance of the Attorney General as health insurance consumer intervenor, the projected importance of given information to the public and to consumers contemplating intervention should be addressed in appropriate circumstances, as indicated earlier in this opinion. But the record made in this case as it relates to the type of information remaining in issue does not warrant a finding that the conclusion of the hearing officer was an abuse of his discretion.

The order of the Court of Appeals is reversed and vacated, and the case is remanded for further proceedings consistent with this opinion.

COOPER, LAMBERT and JOHNSTONE, JJ., and THOMAS P. LEWIS, Special Justice, concur.

WINTERSHEIMER, J., files a separate dissenting opinion in which GRAVES and STUMBO, JJ., join.

STEPHENS, C.J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the Majority Opinion because the Court of Appeals applied the appropriate standard of review and correctly interpreted the statutes governing health insurance rate filings and public hearings. The Court of Appeals order properly protects the public interest as well as the property interest of Southeastern. No irreparable injury will occur to Southeastern if the information subject to this appeal is disclosed.

The general public has a fundamental interest in a complete and detailed explanation of every aspect of the significant rate increases sought by Southeastern for health care insurance. This is the public's business and, therefore, must be open in a democratic republic. Secrecy has no place in a democracy in regard to general functions or the operations of government at any level and certainly has no place in a rate hearing that directly affects the public.

Health insurance policyholders and the public at large must have sufficient information at all stages of a rate hearing so that they may have the opportunity to fully participate in the hearing process in a knowledgeable manner. Information is essential to an informed citizenry.

---

**2.** The Attorney General submitted "prefiled testimony" of an expert witness who, after referring to the broad range of information for which SUMI initially sought protection, offered a one-sentence conclusion: "In my professional opinion, based upon the record I have reviewed in this matter so far, I do not see any substantial support for the claim of competitive injury put forward by SUMI." The hearing officer noted that although the Attorney General had an opportunity to present witnesses at the hearing, this testimony was submitted after the hearing was concluded, and was not subject to cross examination.

KRS 304.2–150(3) and §§ 15 and 16 of Senate Bill No. 343 clearly indicate the intention of the General Assembly to create a more open process for modifying and increasing insurance rates in Kentucky. Senate Bill No. 343, in particular, establishes a presumption that materials related to insurance rate increases are subject to disclosure. The legislation does not necessarily require public disclosure of all information, but the exemptions should be strictly construed so as to allow as much public information as possible. The law provides that rate and form filings and information in support thereof "shall be open." It is a remarkably clear and direct statement of the intention of the legislature. In 1996, the legislature required the Commissioner to perform a thorough review of all recently modified health insurance rates and allows him to order rebates of any charges he considers excessive. There is series of other legislative directives which require the Commissioner to conduct public hearings on any subsequent requests for rate increases of more than 3 percent above the medical rate of inflation; a specific mandate that the Attorney General be a party in all rate hearings; and the authorization for the Commissioner to adopt regulations specifying additional information that must accompany rate filings and provisions to withdraw approval for rates and order refunds of unreasonable charges. All clearly indicate the intention of the General Assembly for open proceedings. These statutes demonstrate a legislative intent to protect both the substance and appearance of fairness in insurance rate hearings and to provide for informed public participation in the process. In order to accomplish this end, the statutes require disclosure of rate filings in a manner likely to show interested policyholders of their specific interest in the particular proceeding.

As noted by the Court of Appeals, any exceptions to the public disclosure of rate filing information must be justified by a finding setting forth compelling reasons for confidentiality. I agree with the Court of Appeals that the evidence offered by Southeastern in support of confidentiality does not overcome the statutory presumption of openness and disclosure. It was reversible error for the hearing officer to describe the materials at issue as proprietary and therefore entitled to confidential protection.

The hearing officer did not clearly articulate the standard he used to ascertain whether the information Southeastern sought to keep secret was in fact proprietary, and he did not demonstrate how the standard he did use applied to the information. Valid trade secrets can be properly protected by use of the Uniform Trade Secrets Act codified in KRS 365.880–900.

My dissent in *Marina Management Services, Inc. v. Cabinet for Tourism*, Ky., 906 S.W.2d 318 (1995), observed that in order to protect trade secrets an argument should be complete and very detailed so as to avoid the necessity of disclosure of any possible trade secrets. The veil of secrecy should not mask the right of the public to ascertain pertinent facts. When public funds are involved in any way the public has an absolute right to expect that clear and open accountability be maintained. Such a principle also applies to the funds of the public that may be involved in the application we consider in this case.

Consequently, the hearing officer is about to proceed incorrectly and improperly in denying access to information the General Assembly had determined should be available to policyholders and health insurance consumers.

This Court in *Morgan v. Blue Cross and Blue Shield of Kentucky, Inc.*, Ky., 794 S.W.2d 629 (1989), held that the public needs protection from arbitrary pricing decisions made by insurance companies and subscribers should have information on such pricing decisions. Such a goal can be accomplished by an open hearing with companies bearing the responsibility of proving a compelling need for confidentiality. This compelling need was not demonstrated in this case. The Attorney General is correct in stating that there would be no adequate remedy by appeal.

The order of the Court of Appeals should be affirmed and this matter should be remanded to the circuit court for issuance of a writ prohibiting the hearing officer of the Insurance Commission from denying public

access to any information submitted in support of the request of Southeastern for a rate increase except as provided by the order of the Court of Appeals. The stay of the administrative proceedings imposed by this Court on September 4, 1996 should be dissolved and the hearing should continue in an atmosphere of full disclosure.

GRAVES and STUMBO, JJ., join in this dissent.