## Neutzel, Clerk of the County Court of Jefferson County, Kentucky v. Ryans.

(Decided May 16, 1919.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, No. 1).

1.   Statutes—Amendments— Certification — Substitution. — Where in a certification of proposed amendments to a house bill by the senate the clerk omits certain of the amendments and without detecting the error the house concurs in the amendments as certified, and thereby certain territory is duplicated and other territory omitted, the necessary words will be substituted, when by so doing effect will be given to the legislative intent.

2.   Statutes—Substitution of Words.—The words "tenth ward" substituted for the words "eleventh and twelfth wards" in a redistricting act so as to avoid duplication, prevent elimination of certain territory and effectuate the manifest intention of the legislature.

3.   Statutes—Interpretation.—The letter of the statute will not be followed when it leads to an absurd conclusion. The reason for an enactment must enter into its interpretation, so as to determine what was to be accomplished by it. The purpose is to give effect to the legislative intent. The will of the legislature, not its words, is the law.

4.   Statutes—Intention—Substitution of Words.—In order to effectuate the legislative intent words may be supplied, omitted, substituted or modified.

5. Statutes—Substitution of Words.—Where words or figures have been erroneously used for others in a statute and the title and context afford the means of correction, the proper words or figures will be deemed substituted or supplied.

6. Statutes—Redistricting Statute.—The Constitution requires the state to be divided into one hundred representative districts and where through error and mistake a redistricting statute duplicates certain territory and omits other territory, words embodied in the statute will be modified if by so doing the duplication will be avoided, representation given the entire territory and the requirements of the Constitution complied with.

J. MATT CHILTON and NAT C. CURETON for appellant

SELLIGMAN & SELLIGMAN and H. M. BROCK for appellee

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

The appellee, Lewis Ryans, filed with the appellant, clerk of the county court of Jefferson county, his notification and declaration to the effect that he would be a candidate of the Republican party for the office of representative from the 50th Legislative District, constituting the Tenth Ward, in the city of Louisville, at the election to be held in November, 1919, and for which nominations would be made at the primary to be held in August, 1919, at the time and in the manner prescribed by law.

Appellant having notified appellee that he would not place his name on the ballot as a candidate for the office aforesaid, this suit was filed asking a writ of mandamus against the appellant requiring him to receive appellee's application for a place on the ballot at the primary to be held in August, 1919, and if he received his party's nomination to have his name placed on the ballot for the November election.

In passing upon a demurrer to the petition as amended the lower court granted the writ of mandamus and directed appellant to receive appellee's petition and place his name upon the ballot as a candidate for the nomination by the Republican party at the primary to be held in August, 1919, and if nominated in said primary to place his name on the ballot as the Republican nominee for the house of representatives in the 58th Legislative District for the November, 1919, election.

Section 33 of the Constitution provides that the first General Assembly, after the adoption of the Constitution, shall divide the state into 100 representative dis-

tricts, as nearly equal in population as possible, which districts shall constitute the representative districts for ten years, and at the expiration of which time and every ten years thereafter the state shall be redistricted.

Under the redistricting act of May 3, 1893, the Tenth Ward of the city of Louisville constituted the 50th Legislative District, and no attempt was made to change these districts until the legislative session of 1918, by an act approved March 26th of that year.

By reference to the last named act it appears that the 51st District is composed of all of Jefferson county outside of the corporate limits of the city of Louisville, the 36th precinct of the Eleventh Ward, the 32nd to the 43rd precincts, inclusive, of the Twelfth Ward, and certain other enumerated precincts in the city of Louisville. The 57th District is composed of all of the Eleventh Ward except the 36th precinct, and all of the Twelfth Ward except the 32nd to 43rd precincts, inclusive, of the city of Louisville. The 58th District embraces the territory of the Eleventh and Twelfth Wards of the city of Louisville.

The bill redistricting the state is entitled ''An act dividing the Commonwealth of Kentucky into one hundred representative districts,'' and is known as ''House Bill No. 38,'' and by reference to the Journal of the Senate for the year 1918, vol. 2, pages 1970, *et seq.*, we find that in the bill as originally drafted and introduced in the House, the 51st District embraced the territory outside of the corporate limits of the city; the 57th District embraced the Tenth Ward and the 58th District the Eleventh and Twelfth Wards.

In its consideration of said house bill the Senate proposed certain amendments thereto. Those pertinent to this case are as follows:

The 51st District to be the same as in the enrolled bill first hereinabove referred to, namely: all of Jefferson county outside of the corporate limits of the city of Louisville, the 36th precinct of the Eleventh Ward, the 32nd to the 43rd precincts, inclusive, of the Twelfth Ward, and certain other enumerated precincts in the city of Louisville. The 57th District to embrace the Tenth Ward and the 58th District to embrace those precincts of the Eleventh and Twelfth Wards not included in the 51st District.

In his certification to the House of Representatives of these proposed amendments, the chief clerk of the Senate thus erroneously reported them:

"(3) Amend H. B. 38 in the Senate by striking out all of lines 58 and 59 on page 3, and all of lines 50 to 73, inclusive, on page 4, and insert in lieu therefor the following:

"Fifty-first District. All of Jefferson county outside of the corporate limits of the city of Louisville, and the 42 to 53 precincts, inclusive, of Third Ward, 27 and 28 precincts of Fifth Ward, 49 and 50 precincts of Seventh Ward, 36 precinct of Eleventh Ward and the 32nd to 43 precincts, inclusive, of the Twelfth Ward of the city of Louisville.

"Fifty-second District. First to fifteenth precincts, inclusive, of the First Ward of the city of Louisville.

"Fifty-third District. All of Second Ward and all of Third Ward except 42nd to 53 precincts, inclusive, of Third Ward of the city of Louisville.

"Fifty-fourth District. All of Fourth Ward and all of Fifth Ward except the 27th and 28th precincts of the city of Louisville.

"Fifty-fifth District. All of Sixth Ward, and all of the Seventh Ward except the 49th and 50th precincts of the Seventh Ward of the city of Louisville.

"Fifty-sixth District. Of the county of Jefferson embracing the territory of the Eighth and Ninth Wards of the city of Louisville.

"Fifty-seventh District. All of the Eleventh Ward except the 36th precinct, and all of the Twelfth Ward, except the 32nd and 43 precincts, inclusive, of the Twelfth Ward, city of Louisville,"

The proposed amendment to the 51st District was correctly reported but the errors in the certification consist, (1) in the elimination of the Tenth Ward; (2) substituting the proposed boundary of the 58th District for that of the 57th District, and (3) the omission of the 58th District.

Without detecting the mistake thus made, the House concurred in the amendments as certified, with the result that all the precincts in the Eleventh and Twelfth Wards are included in the 51st or 57th Districts (as certified), the Tenth Ward is entirely eliminated, and since the proposed change of the 58th District did not reach the House, it remained as in the bill as first introduced,

namely, as embracing the entire Eleventh and Twelfth Wards. Thus it will be seen we have (1) a duplication of the representation of the Eleventh and Twelfth Wards; (2) no representation for the Tenth Ward, and (3) in reality only ninety-nine legislative districts, whereas the Constitution requires a total of one hundred.

It is inconceivable that the legislature intended any such a result. The title of the bill is evidence of the intention to divide the state into one hundred representative districts, as enjoined by the Constitution.

The Tenth Ward was included in the first draft—the Senate merely proposed a rearrangement of these divisions. The error was clearly unintentional.

It is a well settled rule of construction that the letter of a statute will not be followed when it leads to an absurd conclusion. The reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it. The purpose is to give effect to the legislative intent. The will of the legislature, not its words, is the law.

The object sought to be attained by the enactment of a statute being ascertained, it furnishes a most excellent aid in determining whether or not the words used convey the meaning intended by the legislature. When they do not, and from the context, the attendant circumstances, and the object sought to be accomplished, this fact is made to appear, then the words may be modified consistent with the legislative intent. See Sams v. Sams, Admr., 85 Ky. 400, 3 S. W. 594; James, Auditor, v. United States Fidelity & Guaranty Co., 133 Ky. 299, 117 S. W. 406.

In Endlich's Work on the Interpretation of Statutes, sec. 295, the rule is thus stated:

"Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. This is done, sometimes, by giving an unusual meaning to particular words: sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction, that the legislature could not possibly have intended what its words signify, and that the modifications thus

made are mere corrections of careless language, and really give the true intention. The ascertainment of the latter is the cardinal rule, or rather the end and object, of all construction; and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that design into effect, even though in so doing the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter.''

In Lewis' Sutherland on Statutory Construction, sec. 410, it is said:

''Legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors or omissions, provided the intention of the legislature can be collected from the whole statute; and the title and preamble may be referred to for this purpose. . . . Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. This is but making the strict letter of the statute yield to the obvious intent. So words which are meaningless or inconsistent with the intention otherwise plainly expressed in an act have sometimes been rejected as redundant or surplusage. . . .''

As will be seen from the following cases, in order to effectuate the legislative intent, words may be supplied, omitted, substituted or modified:

In Bailey v. Commonwealth, 11 Bush 688, reference is made to the inadvertent use of the word ''immediate'' in a statute.

The word ''unmarried'' was read into a statute in Sams v. Sams, Admr.; *supra,* the word ''man'' being construed to mean ''unmarried man.''

''Depth'' was substituted for ''width'' in Bird, &c. v. Board of Com'rs, &c., 95 Ky. 195, 24 S. W. 118.

In Commonwealth v. Grinstead, 108 Ky. 59, the word ''person'' was held to be superfluous, and a like conclusion reached as to the words ''of grand larceny,'' in Singleton v. Commonwealth, 164 Ky. 243.

An error in punctuation was corrected in Mechanics & Farmers Sav. Bank v. Commonwealth, 128 Ky. 190, a semicolon being substituted for a period.

To give meaning and effect to a statute the words "it shall be unlawful for," and "shall be guilty of an offense," were supplied. Commonwealth v. Herald Pub. Co., et al., 128 Ky. 424.

In James, Auditor, v. U. S. Fidelity & Guaranty Co., *supra,* the word "and" was substituted for the word "or."

In Donlan v. Jewett, 88 Cal. 530, "five thousand" was read as "five thousand six hundred," in an act classifying counties according to population.

"Contestant" was changed to "contestee" in Spear v. Stephenson, 16 Idaho 707, 102 Pac. 365.

"Section 3" was interpreted as "section 5" in Coney v. City of Topeka, 96 Kan. 46, and in Tatlow v. Bacon, 101 Kan. 26, the number "522" was changed to "508" in reference to a section of the Code.

The Constitution of Illinois provides for the division of counties into not more than three classes according to population, for the purpose of regulating the compensation of county officers. In amending a former act the words "seventy thousand" were used instead of "one hundred thousand" and it was claimed the act was void because it made a fourth class of counties in violation of the Constitution.

The substitution of "one hundred thousand" for "seventy thousand" was ordered, the court saying:

"The title should have its due share of consideration in determining the intention of the legislature, and clearly shows, when taken in connection with the class hereinafter referred to, that the legislature made a mistake when it passed the amendment of 1893, in not substituting the words 'one hundred' for and in place of the word 'seventy,' so that the first clause in the section should have read: 'In counties having a population exceeding one hundred thousand inhabitants.' . . . It is manifest that the thing within the letter, to-wit. 'seventy thousand' is not within the statute because not within the intention, while the thing within the intention, to-wit 'one hundred thousand,' is within the statute, though not within the letter.' " People v. Gaulter, 149 Ill. 39, 36 N. E. 576.

• Neacy v. Board of Sup'rs of Milwaukee county, et al., 150 Wis. 616, 128 N. W. 1063, a case very much in point. This suit involved the construction of a statute empowering a county board to acquire by purchase or condem-

nation all land necessary on which to locate, relocate or maintain a house of correction. The court cites many examples of interpolation, rejection and transposition of words to render a legislative enactment capable of being given a sensible effect in accordance with the purpose of the lawmakers, and then states:

"Applying the foregoing to the act before us the error in the first clause is corrected materially by the last clause, showing that the preceding, in part, related to the purchase of lands for the relocation of a house of correction. The collection of words carelessly used to express such purpose is rendered clear in literal sense, in harmony with the manifest intent, by transposing from their legislative location the words, 'under any law of the state of Wisconsin,' to a place after the words 'or relocate and maintain,' and expanding the word 'whenever' so as to express with its appropriate context the idea intended and fairly suggested, by adding thereto the words 'it shall so determine,' or similar words, and placing the whole as a qualifying clause after the word 'therein.'

"An examination of the original bill shows the words thus efficiently transposed, in the laws of 1903, were misplaced by carelessness at the start, and that they persisted to the end, notwithstanding the bill took all the ordinary steps in its course to lodgment in the office of the Secretary of State as a completed enactment, including consideration by three committees. However, the real meaning is made very plain, as we have seen."

In sec. 459 of the Kentucky Statutes, it is provided that "all statutes shall be construed with a view to carry out the intention of the legislature."

We deem further citation unnecessary.

By substituting the words "Tenth Ward" for the words "Eleventh and Twelfth Wards," in the description of the 58th District (being the ninth paragraph of page 137 of the Acts of 1918) it will read·

"Fifty-eighth District of the county of Jefferson, embracing the territory of the Tenth Ward of the city of Louisville."

This is unquestionably what the legislature intended and we so construe it. By thus modifying the act a slight change is made in the geographical sequence of the districts affected, but duplication of territory is avoided; representation is given to the Tenth Ward and

the entire city and county; the constitutional requirement is met in the division of the state into one hundred representative districts, and a sensible interpretation given the statute. Nor does this do the least violence to the established rules of statutory construction. Legislative enactments no more than other documents ought to be defeated on account of errors, mistakes or omissions. Where words or figures have been erroneously used for others, and the title and context afford the means of correction, the proper words or figures will be deemed substituted or supplied. This is only making the naked letter of the statute yield to its obvious intent.

For the reasons herein stated the judgment of the circuit court is affirmed.