HUMCO, INC., d/b/a Humana Hospital–Lexington, Appellant,

v.

Honorable Mary C. NOBLE, Judge, Fayette Circuit Court, Fifth Division, Appellee.

Mary Coleman, Real Party in Interest.

No. 2000–SC–0018–MR.

Supreme Court of Kentucky.

Nov. 22, 2000.

Jeffrey J. Kuebler, Kuebler Law Offices, Lexington, for Appellant.

Mary C. Noble, Judge, Fayette Circuit Court, Lexington, for Appellee, Mary C. Noble.

Albert F. Grasch, Jr., Theodore E. Cowen, Grasch & Cowen, P.S.C., Lexington, for Appellee, Real Party in Interest, Mary Coleman.

John C. Roach, Robert E. Wier, Ransdell, Roach & Wier, PLLC, Lexington, for Amicus Curiae, the Kentucky Academy of Trial Attorneys.

LAMBERT, Chief Justice.

Pursuant to CR 76.36(7)(a), Humco, Inc., doing business as Humana Hospital–Lexington ("Humana"), appeals from an order of the Court of Appeals denying its petition for a writ of mandamus. Through the writ, Humco sought to compel Judge Mary C. Noble of the Fayette Circuit Court to disqualify opposing counsel for allegedly making improper *ex parte* contacts, in violation of SCR 3.130(4.2), with current and former Humana employees and to suppress written statements obtained as a result of these contacts.

The underlying claim involves allegations of racial discrimination by the real party in interest, Mary Coleman, against Humana, her former employer for which she worked as a nurse from 1988 to 1995. In July 1995, prior to suit being filed, Coleman's former counsel, Virginia M. Angellis, wrote to Becky Adams, hospital administrator for Humana, regarding Coleman's discrimination claims. Adams responded in a letter, noting on the letter that it was copied to Humana's legal counsel: "Lois Hess, House Counsel, Jewish Hospital HealthCare Services." The letter indicated that Humana did not tolerate discrimination in its organization and that it had an internal grievance procedure for dealing with discrimination claims.

In September 1995, prior to the commencement of litigation, Angellis contacted five Humana employees regarding the matter. At least four were current employees at the time of contact, and the position and employment status of the fifth is unknown. Of these four, three were staff nurses and one was a staffing coordinator. In her affidavit in this proceeding, Angellis stated that she did not know that Humana was represented by counsel on this matter at the time she undertook the witness interviews. She further stated that she was unaware that Humana was formally represented until March 1996, after suit had been filed and William Rambi-

cure had entered his appearance as counsel for Humana.

In March 1996, Coleman filed suit against Humana. In May 1996, Albert F. Grasch and Theodore E. Cowen of Grasch and Cowen, P.S.C., replaced Angellis as counsel for Coleman, and the new attorneys took possession of the notes prepared by Angellis from her communications with Humana employees. From September 1996 through the winter of 1998, Coleman's counsel contacted approximately ten *former* Humana employees, at both management and non-management levels, without notice to or consent of Humana counsel. Two of these former employees were involved in meetings and discussions regarding the disciplining of Coleman and the ultimate termination of her employment with Humana.

On February 5, 1999, Humana filed a motion in the trial court seeking disqualification of Coleman's attorneys based upon allegedly improper *ex parte* contacts with current and former Humana employees. In its motion, Humana also requested that the trial court suppress any further use of statements obtained from Humana employees through these contacts. The trial court denied the motion for two reasons. With regard to the current employees Angellis had contacted, the trial court held that the contacts were not improper because the employees were not at a managerial or supervisory level or because the contacts occurred before Humana was represented by counsel. With regard to the former employees contacted by Grasch and Cowen, the trial court held such contact is not prohibited by SCR 3.130(4.2), regardless of whether the employees were at management level or otherwise.

Humana then filed a petition for a writ of mandamus in the Court of Appeals, seeking to compel the trial court to disqualify Grasch and Cowen and to suppress the statements they had obtained. The Court of Appeals denied the writ, holding with regard to the Angellis contacts that there was no evidence that Humana was

formally represented by counsel at that time and that the July 1995 letter to Angellis, copied to Humana's in-house counsel, was insufficient to put Angellis on notice that Humana was represented by counsel. In support of this conclusion, the Court of Appeals relied upon *K–Mart v. Helton*,[1] which held that the knowledge that corporations have in-house counsel is not sufficient to provide actual notice of representation.

The Court of Appeals further held that the second set of contacts, between Coleman's current counsel and former Humana employees, were not improper because contact with former employees is not prohibited. In support of this result, the Court of Appeals adopted Formal Ethics Opinion, KBA E–381, which states that communications with unrepresented former employees of an organizational party do not violate SCR 3.130(4.2).

■ Humana now contends, relying on *Shoney's Inc. v. Lewis*,[2] that the contacts made by Angellis with current employees were improper as Humana was represented by counsel at the time. Humana maintains that the letter sent by Adams to Angellis and copied to Humana's in-house counsel makes such representation clear. In *Shoney's*, the plaintiff's counsel was explicitly advised that the defendant corporation was represented by counsel and was given the name of such counsel. No such explicit information was conveyed to Angellis in this case. Adams' letter did not state that Humana was represented by an attorney nor state that all further contact was to be through Hess. Adams' letter did not state that Hess was to be consulted in the matter.

■ Individuals often copy "their attorney" on letters, but that fact alone does not establish that the attorney is repre-

senting the letter-writer nor does this record reveal any such representation.[3]

This conclusion is supported by a Formal Opinion of the American Bar Association, No. 95–396. This opinion states that the requirement in Rule 4.2 of "securing permission of counsel is limited to those circumstances where the inquiring lawyer 'knows' that the person with whom he wants to speak is represented by counsel with respect to the subject of the communication." The opinion further states that actual knowledge is required and may be inferred from the circumstances.[4] Such circumstances are not present in this case, as there is no evidence from the record that Humana was formally represented by Hess when the communications occurred or that Angellis knew that Humana was represented by counsel.

■ With regard to former managerial employees, Humana urges this Court to hold that such contacts should be prohibited if they concern the subject of representation and if the former employee has personal knowledge of the matter that could be imputed to the employer. With regard to former non-managerial employees, Humana argues that contact should be prohibited if an employee's acts or omissions may be imputed to the organization or if their statements may constitute admissions by the organization. To resolve the issue of whether confidential information should remain confidential regardless of whether the individual is still employed, it is necessary to review the rule, its rationale, and interpretations thereof.

SCR 3.130, Rule 4.2, entitled "Communication with Person Represented by Counsel," limits an attorney's right to contact the employees of a represented organization. Specifically, the rule provides:

1. Ky., 894 S.W.2d 630 (1995).

2. Ky., 875 S.W.2d 514 (1994).

3. *See K–Mart v. Helton, supra; Miano v. AC & R Advertising, Inc.*, 148 F.R.D. 68, 80 (S.D.N.Y.1993)("mere existence of general

counsel, without particular involvement in the matter at issue, is insufficient to render a corporation 'represented' ").

4. ABA Formal Opinion 95–396 at 12–13.

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The official commentary to the rule explains that there are three categories of employees of a represented organization that are off limits to opposing counsel: 1) persons having managerial responsibility on behalf of the organization, 2) any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability, and 3) any other person whose statement may constitute an admission on the part of the organization.[5]

The rule does not distinguish between current and former employees of the organization. As noted by the Court of Appeals, Formal Ethics Opinion KBA E–381 provides guidance in this area. In holding that *ex parte* contact with an organization's former employees is not prohibited, the ethics opinion reasoned, "a former employee is no longer subject to the control of the organization nor in a position to speak for the organization, and cannot make vicarious admissions under the state and federal evidence rules." The opinion refers to a formal opinion issued in 1991 by the American Bar Association Committee on Ethics and Professional Responsibility, which explicitly states that Rule 4.2 does not extend to former employees, even if they are former managerial employees or those whose conduct might have been the basis for imputing liability to the employer or whose statements could be admitted in evidence as an admission by the employer.[6]

We believe this to be the sound approach and observe that it has been adopted by the majority of other jurisdictions. The majority rule is consistent with the purposes and policies of Rule 4.2. The purpose of Rule 4.2 is not "to prevent the flow of information, even if damaging to a party in a suit."[7] Rather, it is to preserve the positions of the parties in an adversarial system and thereby to maintain the protections obtained by employing counsel and prevent disruption of the attorney-client relationship. A former employee with no present relationship with the organizational party is not a "party" under the rule, and thus the individual is not adverse in the sense that his interests are at stake in the litigation.

Finally, Humana argues that the Court of Appeals should be reversed and the writ of mandamus granted because, even if no technical ethical violation occurred, Coleman's attorneys have created an impermissible appearance of impropriety.[8] This standard has been adopted as a basis independent of SCR 1.9 for enforcing an attorney's duty of loyalty and confidentiality to a former client to avoid compromise by subsequent representation of another party.[9] *Lovell* is clearly limited to protecting the attorney/client relationship or the reasonable expectations of parties in that regard and to promoting public confidence in the integrity of the legal profession. We decline the invitation to extend this standard to situations involving transactions with persons other than clients under SCR 4.2.

A writ of mandamus is an extraordinary remedy and should be granted only when the lower court "is proceeding or about to proceed without jurisdiction, and there is no adequate remedy by law, or to establish that the lower court, al-

---

5. *See Shoney's v. Lewis*, Ky., 875 S.W.2d 514, 515 (1994)(*citing* SCR 3.130, Rule 4.2, comment 2).

6. ABA Committee on Ethics and Professional Responsibility, Formal Op. 91–359, at 6 (March 22, 1991).

7. *Aiken v. The Business and Industry Health Group, Inc.*, 885 F.Supp. 1474, 1479 (D. Kan. 1995).

8. *Lovell v. Winchester*, Ky., 941 S.W.2d 466 (1997).

9. *Id.* at 468–469.

though acting with jurisdiction, is about to act incorrectly and there is no adequate remedy by appeal and great injustice or irreparable injury would result." [10] In deciding the propriety of the denial of a writ, this Court must determine whether the Court of Appeals exercised sound discretion or acted arbitrarily.[11] Here, we are compelled to conclude that the Court of Appeals' decision was not arbitrary and that it acted properly in denying Humana's request for a writ ordering disqualification of opposing counsel.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

All concur, except WINTERSHEIMER, J., who concurs in result only.

10. *Bock v. Graves*, Ky., 804 S.W.2d 6, 9 (1991).

11. *Jones v. Hogg*, Ky., 639 S.W.2d 543 (1982).