Marvin E. **STRONG**, Jr., Secretary of the Cabinet for Economic Development, Appellant,

v.

**A.B. CHANDLER III**, Attorney General of the Commonwealth of Kentucky, Appellee.

No. 2000–SC–0436–DG.

Supreme Court of Kentucky.

March 21, 2002.

Donna Greenwell Dutton, Executive Branch Ethics Commission, Emily Dennis, Cabinet for Economic Development, Robin Fields Kinney, Cabinet for Economic Development, Frankfort, Brent L. Caldwell, Steve G. Amato, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Lexington, Counsel for Appellant.

A.B. Chandler III, Attorney General, James J. Grawe, Assistant Attorney General, Scott White, Office of the Attorney General, Civil and Environmental Law Division, Frankfort, Counsel for Appellee.

James P. Benassi, Frankfort, Counsel for Amicus Curiae, Community Farm Alliance, Inc.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals vacating an opinion and order and summary judgment of the Franklin Circuit Court in favor of the Cabinet and remanding with directions for an in camera inspection of the records in question.

The principal issue is whether KRS 15.020 and KRS 15.060 permit the Attorney General to review the records of the Cabinet pertaining to economic incentives extended to Alliance Research or whether

such review is governed by the Open Records Act set out in KRS 61.870, et seq.

This particular dispute between the Secretary of the Cabinet for Economic Development and the Attorney General relates to the right of the Attorney General to inspect certain confidential documents in the possession of the Cabinet relating to economic incentives extended to a corporation which later closed one of its two Kentucky facilities and moved that operation to West Virginia.

The Franklin Circuit Court entered summary judgment in favor of the Cabinet determining that the Open Records Act, specifically KRS 61.878, controlled. A panel of the Court of Appeals vacated and remanded for an in camera inspection as to the requested documents in order to determine their relevancy to the inquiry of the Attorney General. The Court of Appeals held that the Attorney General was a protector of the treasury of the Commonwealth and entitled to inspect the documents pursuant to KRS 15.060(2). This Court accepted discretionary review.

Secretary Strong argues that the documents are confidential and proprietary and thus exempt from production under the Open Records Act, KRS 61.870, et seq. He contends that the prior decisions of this Court in *Hoy v. Kentucky Industrial Revitalization Authority,* Ky., 907 S.W.2d 766 (1995); *Marina Management Services, Inc. v. Commonwealth, Cab. for Tourism,* Ky., 906 S.W.2d 318 (1995) and *Southeastern United Medigroup, Inc. v. Hughes,* Ky., 952 S.W.2d 195 (1997), have held that confidential and proprietary documents shall not be disclosed. He contends that KRS 15.020 and KRS 15.060 do not provide a basis for the Attorney General to avoid the provisions of the Open Records Act. Strong asserts that the Open Records Act prohibited the Cabinet from disclosing to the Attorney General the documents in

question. He further claims that maintaining the confidentiality of the documents is consistent with the other applicable law and the contract of the Cabinet with the company receiving tax incentives. Finally, he maintains that the relief of an in camera inspection granted by the Court of Appeals is unworkable.

The Attorney General responds that the legislature in KRS 15.020 and KRS 15.060 requires him to be the guardian of the treasury. He argues that as the chief law officer of the Commonwealth, he has authority pursuant to KRS 15.020, KRS 15.060 and the common law to investigate whether incentive contracts between the Commonwealth and the corporation were breached and in connection therewith, he is entitled to inspect and review documents in the possession of the Cabinet. The Attorney General contends that this is not an open records case but is a case controlled by KRS 15.060(2), which permits him to review the records of the Cabinet pertaining to the Alliance Research incentive contract. He asserts that the Open Records Act does not inhibit his power to review the records of the Cabinet. The Attorney General claims that the decisions of this Court in *Hoy, supra, Marina, supra,* and *Southeastern, supra,* do not shield the Cabinet from cooperating with the investigation by the Attorney General as required by KRS 15.060.

## I. Background

The Cabinet for Economic Development is a program cabinet established by KRS 12.020(11)(5) and defined in KRS 12.010(9). It is governed by the Kentucky Economic Development Partnership, a board established pursuant to KRS 154.10–010. The mission of the Cabinet is to implement long-term strategic planning and implementation that fosters sustainable growth in jobs and incomes and enables communi-

ties, businesses, governments and individuals to compete in the global marketplace. KRS 154.01–020(1). Accordingly, certain business entities are offered significant financial incentives to locate in Kentucky. In order to encourage such businesses to apply for the incentive programs, the Cabinet agrees that confidential or proprietary information contained in the application will not be disclosed except to the extent required by law.

In 1997, it became known that Alliance Research, Inc., a private foreign corporation, which had obtained economic incentives from the Commonwealth of Kentucky through the Cabinet, intended to close its plant in Radcliff and move the operation to West Virginia. Presumably, a number of Kentucky residents would lose their jobs as a result of the move. The Attorney General became concerned and requested a review of all information and documents relating to economic incentives provided to Alliance Research. He advised the Cabinet by letter that his purpose was to ascertain if any incentive contracts had been breached. If so, the Attorney General states that he is duty bound to obtain recompense for the people of the Commonwealth. The Secretary of the Cabinet responded by denying the request for confidential and proprietary information. He claims that the Open Records Act, KRS 61.870–884 and KRS 61.878(1)(c)(2)(b), provided an exemption in the Act. The Attorney General disagrees with the Secretary and maintains that the Open Records Act has no application to a request made pursuant to KRS 15.060.

## II.   KRS 15.060

■   The Attorney General, as the chief law officer of the Commonwealth, has the responsibility, pursuant to KRS 15.020 and KRS 15.060, to protect the treasury. KRS 15.060 outlines the duties of the Attorney General in regard to actions to collect and recover money due the Commonwealth. It provides as follows:

The Attorney General shall:

(1) With the assistance of the Auditor of Public Accounts and the Revenue Cabinet, investigate the condition of all unsatisfied claims, demands, accounts and judgments in favor of the Commonwealth.

(2) When he believes that any fraudulent, erroneous or illegal fee bill, account, credit, charge or claim has been erroneously or improperly approved, allowed or paid out of the Treasury to any person, institute the necessary actions to recover the same. To this end he may employ assistants and experts to assist in examining the fee bills, accounts, settlements, credits and claims, and the books, records and papers of any of the officers of the Commonwealth.

(3) Institute the necessary actions to collect and cause the payment into the Treasury of all unsatisfied claims, demands, accounts and judgments in favor of the Commonwealth, except where specific statutory authority is given the Revenue Cabinet to do so.

KRS 61.878(1), which Strong relies upon, reads in relevant part as follows:

(1) The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction, except that no court shall authorize the inspection by any party of any materials pertaining to civil litigation beyond that which is provided by the Rules of Civil Procedure governing pretrial discovery:

. . . .

2. Upon and after July 15, 1992, records confidentially disclosed to an agency or required by an agency to be disclosed to it, generally recognized as

confidential or proprietary, which are compiled and maintained:

. . . .

    b. In conjunction with an application for or the administration of assessments, incentives, inducements, and tax credits as described in KRS Chapter 154.

Subsection 5 of the same section specifically addresses the exchange of documents between public agencies. It provides in pertinent part:

    (5) The provisions of this section shall in no way prohibit or limit the exchange of public records or the sharing of information between public agencies when the exchange is serving a legitimate government need or is necessary in the performance of a legitimate government function.

The circuit court erred when it granted the Cabinet summary judgment based on its findings of the confidentiality section only. The language of KRS 61.878(5) is clear and unambiguous. It states that the exchange of information between public agencies is not prohibited or limited if such an exchange is necessary in the performance of a legitimate government function. It is without question that the Attorney General seeks the confidential documents for the valid purpose of determining whether Alliance broke its incentive contract with the Cabinet and, if so, whether Alliance owes moneys to the Treasury. Thus, the Attorney General was exercising a legitimate government function under KRS 61.878(5). It would appear that the Attorney General is restricted by the promise of the Cabinet to Alliance of nondisclosure and by operation of KRS 61.878(1)(c)(2)(b) from revealing such documents publicly. However, the statutes do not remove such documents from review and inspection by the Attorney General.

■ Companies who qualify for economic incentives receive some tangible benefit from the treasury. If such a company does not fulfill its obligation, then there may have been an improper payment or credit from the treasury. In any such case, the Attorney General, if he believes there to have been such an improper payment or credit, must institute an action. The decision to begin an action is mandatory and not discretionary.

Here, the exact nature of the incentives is unknown although they were given in return for the creation of jobs in Kentucky. Those jobs will be lost by the relocation of the facility in another state. The mere review of these records by the Attorney General does not mean that any wrongdoing has occurred. The language of KRS 15.060(2) does not limit the Attorney General to a review of documents after an action is instituted. It does provide that the Attorney General may review any records of any officer of the Commonwealth to assist him in determining whether there has been an improper charge on the Treasury. It is only after that inspection has been accomplished that it can be properly determined whether there is a basis to bring an action.

■ The power to institute actions must include the ability to inspect and review documents and information relative to a determination of whether a good faith belief exists in order to bring legal action. *Folks v. Barren County*, 313 Ky. 515, 232 S.W.2d 1010 (1950). The power granted by the statute is not limited to that which is expressly conferred but also includes that which is necessary to accomplish the things which are expressly authorized. *See Long v. Mayo*, 271 Ky. 192, 111 S.W.2d 633 (1937).

We find the interpretation by the Cabinet improperly narrow as to the construc-

tion of KRS 15.060(2) because it would limit the review by the Attorney General to those instances in which an action was already pending. The plain language of the statute does not allow such an interpretation. *See Bradley v. Austin,* 841 F.2d 1288 (6th Cir.1988). Approval for the common sense concept of investigating before filing a suit in the context of a statutorily delegated authority to sue may be found in *Naegele Outdoor Advertising Co. v. Moulton,* 773 F.2d 692 (6th Cir.1985), a case in which a corporation suspected of violating the campaign finance laws brought an action to enjoin the Kentucky State Police and prosecutors from conducting an investigation. *See also Democratic Party of Kentucky v. Graham,* Ky., 976 S.W.2d 423 (1998).

### III. Not Open Records Act

▮ The authority to require compliance pursuant to KRS 15.060(2) is independent of the Open Records Act. The requested documents may be confidential and proprietary but they are not exempt from disclosure under KRS 61.878(1)(c)(2)(b) because this action is founded on statutes other than the Open Records Act. The request to inspect the records was never made under the Open Records Act, but rather under the independent statutory authority of the Attorney General to conduct necessary investigation to determine whether there had been a breach of the incentive contract. The independent source of the authority to inspect and review does not involve the Open Records Act. The right to an independent investigation conducted by the Attorney General is superior to any rights granted or implied under the Open Records Act. KRS 15.060(2) requires the cooperation of state officers in any Attorney General review of this nature. The Open Records Act itself excludes this request from its scope and specifically permits inspection otherwise not provided by the Open Records Act. KRS 61.878(1)(c)(3) states that the exemptions provided for in the Open Records Act shall not apply to records, the disclosure or publication of which is directed by another statute. It appears to be conceded by all parties that such disclosure at this time is limited to the Attorney General or his assistants in the investigative state.

▮ In interpreting KRS 15.060(2), we must be guided by the intent of the legislature in enacting the law. *See Davis v. Commonwealth Life Ins. Co.,* Ky., 284 S.W.2d 809 (1955). No single word or sentence is determinative, but the statute as a whole must be considered. *Graham, supra.* Thus, it is clear that the legislature intended the Attorney General to act as a protector of the treasury and the legislature recognized that the Attorney General would necessarily need to inspect various state documents in order to perform his statutory responsibility. Consequently, it is implicit in KRS 15.060(2) that there is authority to compel inspection of documents possessed by other officers of the Commonwealth. It is well recognized that a statute naturally carries with it all the powers necessary to its exercise. *Commonwealth ex rel Breckinridge v. Nunn,* Ky., 452 S.W.2d 381 (1970). Therefore, we interpret KRS 15.060(2) as empowering the Attorney General to compel the production of documents that are in the possession of the officers of the Commonwealth and are relevant to the recovery of treasury funds.

### IV. Decisions Do Not Shield the Cabinet from Investigation

As we have noted previously, subsection 5 of KRS 61.878 provides that the statute "shall in no way prohibit or limit the exchange of public records or the sharing of

information between public agencies when the exchange is serving a legitimate governmental need or is necessary in the performance of a legitimate government function." Reliance by the Cabinet on *Marina, Hoy,* and *Southeastern* is misplaced.

This is not an open records case. *Marina, Hoy* and *Southeastern* involve the meaning of the confidential and proprietary exemption found in KRS 61.878(1)(c)(2)(b). These cases are not applicable here to the extent that they are concerned with that exemption. As noted earlier, this is not an open records case. It is not necessary for us to pursue any additional discussion of such cases.

The issue here is limited to the question of inspection by the Attorney General. We fully recognize that when public funds are involved there is an inherent necessity for public accountability. Such a concept can best be achieved by cooperation among public agencies so that reasonable and responsible oversight on how public contracts are administered can be realized. This opinion does not pass on the issue of whether the documents in question are subject to full public disclosure.

It is the decision of this Court that the Attorney General has the authority to inspect and review the records of the Cabinet pertaining to the incentive contract with Alliance. Such inspection shall be conducted by the Attorney General in camera under the supervision of the circuit court.

The decision of the Court of Appeals is affirmed.

All concur.