COUNTY OF HARLAN; Harlan County Fiscal Court; Delzinna Belcher, Harlan County Judge Executive; and Howard Helton, Harlan County Jailer, Appellants,

v.

APPALACHIAN REGIONAL HEALTHCARE, INC., Appellee.

No. 2001–SC–0423–DG.

Supreme Court of Kentucky.

Sept. 26, 2002.

Jaron Paul Blandford, Brent L. Caldwell, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Lexington, Counsel for Appellants.

Charles D. Cole, David T. Enlow, Tracy S. Enlow, Enlow, Wright & Enlow, PLLC, Lexington, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals reversing an order of the circuit court which had denied a writ of mandamus sought by Appalachian Regional Healthcare, Inc. against the Harlan County Jailer.

The principal issue presented is whether a writ of mandamus should be issued requiring the jailer to take the necessary steps to ensure that an indigency determination is made for inmates in his county who require medical attention.

The dispute arose between Appalachian Regional Healthcare, Inc. and the Harlan County Jailer and county officials concerning medical services provided to inmates in the custody of the jailer from 1995 until 1998. Healthcare filed a complaint in circuit court demanding judgment for medical services rendered to indigent inmates in an amount exceeding $300,000 and sought a writ of mandamus to compel the jailer to comply with duties it believed were imposed on the jailer by statute. The question of monetary damages was settled, but the issue regarding the writ of mandamus, which centered on who had to fill out the necessary paper work, was denied by the circuit judge. The Court of Appeals reversed that decision and remanded the case to the circuit judge to issue an appropriate writ. This Court accepted discretionary review.

Harlan County argues that the jailer is under no such statutory duty to determine if an inmate is indigent for the purposes of KRS 441.045. It contends that a writ of mandamus can only issue against a public official when that official has a nondiscretionary duty to perform the activity being requested. Harlan County maintains that KRS 441.045 and KRS 31.120 are clear and specific and must be strictly interpreted according to the language of each statute. It also claims that the relief granted by the Court of Appeals is not workable.

Healthcare responds that the Court of Appeals was correct in holding that the jailer had a statutory duty to take the necessary steps to seek an indigency determination for inmates of the county needing medical attention. It argues that the writ of mandamus is a proper remedy to require the jailer to perform such statutory duties and that the jailer has a statutory duty to seek an indigency determination for inmates who need medical service. Healthcare asserts that KRS 441.045 should be construed to require the jailer to take certain actions to determine or assist in the determination of indigency.

The parties agree that the county bears responsibility for the cost of "necessary" medical services for indigent prisoners pursuant to KRS 441.045. Section 8(a) of the statute begins with the following sentence: "The determination of whether a prisoner is indigent shall be made pursu-

ant to KRS 31.120." Although Section (2) of KRS 31.120 addresses a judicial resolution of indigency status based on an affidavit of indigency "compiled by the pretrial release officer," the county reads the Court of Appeals' opinion as improperly placing on county jailers a "supervisory role" over pretrial release officers with regard to indigency determinations. The county also points to an apparent contradiction in the language used by the Court of Appeals:

> While we agree with the jailer that a writ of mandamus should not be issued to compel him to complete the affidavit of indigency forms, we believe that his position as custodian of the prisoners requires him to take the necessary steps to seek an indigency determination.

The Court of Appeals panel remanded the case to the circuit court for entry of a writ of mandamus consistent with the opinion rendered.

## I. Duties of Jailer/County

KRS 441.045(3) places the burden for the cost of necessary medical care rendered to indigent prisoners in the county jail on the shoulders of the county government. KRS 441.045(8)(a) provides that the determination of indigency shall be made pursuant to KRS 31.120, which defines a "needy" person for purposes of court appointment of counsel. A person seeking needy status is to certify by an affidavit of indigency the material factors relating to his inability to pay.

No difference is recognized between legal and medical needs by either statute. KRS 441.045(3) obliges the county to pay for necessary medical care for all indigent prisoners regardless of whether they have certified such indigency by means of an affidavit for purposes of obtaining court appointed counsel. KRS 441.045(8)(a) indicates that a prisoner shall not be consid-

ered indigent for the purposes of receiving medical care if the prisoner has funds in an inmate account to cover all or a portion of medical expenses, if there is a medical insurance policy to cover the expenses, or if the prisoner has private resources to pay for the use of medical facilities.

■ It is clear that the intent of this statutory system is for the jailer to have some role in seeking the determination of indigency for medical purposes. The jailer should be in the best position to know whether an inmate has funds in the inmate account, and as a custodian of the prisoner, should know whether the inmate has private insurance or other resources with which to pay medical expenses. Of necessity, this section supports the position that a jailer has a role in seeing that the necessary paper work for a determination of indigency be made for an inmate who receives medical care. We must agree with the Court of Appeals that the statute contemplates that the jailer is responsible for the care and custody of the inmates and that it is a reasonable contemplation of the system provided by the General Assembly that the jailer is responsible for taking the necessary steps to seek a determination concerning indigency for medical care purposes.

Naturally, the determination of such a status is left to the judicial system. The presentation of the necessary paper work must be a combined effort by the jailer and the pretrial release service. Thus, KRS 441.045 must be construed so as to require the jailer to take certain actions to determine or assist in the determination of indigency. KRS 441.045 principally concerns payment for the costs associated with medical, dental and psychological care of inmates in the county jail.

It is legitimate to construe the statute so as to require the jailer to see that the

necessary steps to seek an indigency determination for medical treatment are taken so that the requirements of the statute and the intent of the legislature will be fulfilled.

■ General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy. *Democratic Party of Ky. v. Graham,* Ky., 976 S.W.2d 423 (1998). The power granted by a statute is not limited to that which is expressly conferred but also includes that which is necessary to accomplish the things which are expressly authorized. *See Strong v. Chandler,* Ky., 70 S.W.3d 405 (2002) *citing Long v. Mayo,* 271 Ky. 192, 111 S.W.2d 633 (1937). In interpreting a statute, this Court must be guided by the intent of the legislature in enacting the law. No single word or sentence is determinative, but the statute as a whole must be considered. *Strong, supra; see also Davis v. Commonwealth Life Insurance Co.,* Ky., 284 S.W.2d 809 (1955); *Graham, supra.* In order to effectuate the legislative intent, words may be supplied, omitted, substituted or modified. The purpose is to give effect to the intent of the legislature. *Neutzel v. Ryans,* 184 Ky. 292, 211 S.W. 852 (1919). KRS 446.080 provides that all statutes shall be liberally construed to carry out the intent of the legislature.

The administrative burden of the jailer comes from his custodial responsibilities as stated in KRS 71.020, 71.030 and 71.040. KRS 71.040 requires humane treatment of prisoners and as such necessarily includes the proper paper work or assistance therewith. Not to require the jailer to cooperate with other officials in providing the necessary services would produce an absurd result and frustrate the system envisioned by the legislature. There is no question that the jailer can easily comply with the duties required. The result envisioned by obedience to the statute is very workable. Here, there is a legal duty and it must be fulfilled.

In *Gordon v. Morrow,* 186 Ky. 713, 218 S.W. 258 (1920), the court recognized that although no express statutory authority authorized the state auditor to issue a warrant in payment of a judgment or pay special counsel employed by the Governor, the court indicated that it should hardly be a question that the state auditor would be under such a duty. *Gordon, supra,* went on to say "the legislature in authorizing the employment of special counsel also authorized such counsel to take such action as might be necessary to recover the compensation to which they were entitled." In *Trimble County Fiscal Court v. Trimble County Bd. of Health,* Ky.App., 587 S.W.2d 276 (1979), the County Board of Health brought an action against magistrates of the Trimble County Fiscal Court seeking a writ of mandamus ordering the magistrates to set a specific health tax rate. The Court of Appeals affirmed the circuit court which granted the writ and judgment so as to direct the county clerk to prepare tax bills with the levy. The Court of Appeals reasoned that requiring the clerk to prepare the bills "merely recognizes that what has been ordered to be done will be done."

Here, the county is statutorily required to pay for the necessary medical bills of indigent inmates. Requiring the jailer to take the necessary steps to seek a determination of indigency for inmates in his custody merely assures that what has been ordered by the legislature will be done. When KRS 441.045 is taken as a whole and considered with the responsibility of the jailer for the inmate in his custody, it is clear that the jailer has the duty to take the necessary steps to seek an indigency

determination. To do otherwise would produce an absurd result. *Cf. Layne v. Newberg,* Ky., 841 S.W.2d 181 (1992).

As a custodian for the inmates, the jailer has the duty to insure that the intended result of the statute is achieved. To hold otherwise would frustrate the intent of the legislature. We find the reliance by Harlan County on *Newberg, supra,* to be misplaced. We are not convinced by the citations to authority in *Hatchett v. City of Glasgow,* Ky., 340 S.W.2d 248 (1960) or *Commonwealth v. Allen,* Ky., 980 S.W.2d 278 (1998).

The common sense and reasonable interpretation of KRS 441.045(8), is that the reference to KRS 31.120 was intended for the purpose of incorporating the financial provisions for determining indigency into the mandate of KRS 441.045(8). The legislature did not find it necessary to set forth another procedure for separately determining indigency. It is clear that whatever paper work the judicial system may require to establish indigency must be processed by the jailer. The jailer can request the pretrial officer to compile the necessary affidavit and swear to it. These officers must work together and already do so in many counties and in many other aspects involving prisoners. It is of interest to note from the record that the Kentucky Department of Corrections has supplied all county jailers with forms necessary for their counties to be reimbursed under the state's catastrophic program.

 The statutory system ordained by the legislature is clear. It contemplates the appropriate payment to a healthcare provider when the jailer fulfills certain statutory obligations. These responsibilities include arrangements with the sheriff for the transportation of the inmate to the healthcare facility and assistance to the inmate in obtaining indigent status so that the final medical expense can be paid by the county as necessary. The payment of medical bills for indigents is not limited to those inmates who receive public defender assistance in the legal aspects of their involvement in the judicial and penal system. *Folks v. Barren County,* 313 Ky. 515, 232 S.W.2d 1010 (1950), states that mere imperfections in a statute may be cured by judicial construction. Clarification may be had by considering the character and nature of the statute and the purpose to be accomplished. Deficiencies may be supplied by inference or implication from the act as a whole. *Folks, supra. Folks* asserted that "where the end is expressly given, the means necessary to the effectuation of that end are given by implication."

Here, the end is that the county must pay for necessary medical expenses for indigent inmates and the means necessary to produce this end is that the jailer who has custody of the inmate, must take the necessary steps to assist in making sure that required paper work to establish indigency is complete.

## II. Writ of Mandamus Remedy

 In some ways it may seem harsh that a writ of mandamus is necessary to require a jailer to perform statutory duties. However, the function of a writ of mandamus is to compel an official to perform duties of that official where an element of discretion does not occur. It does not usurp legislative powers or invade the functions of an independent branch of government. *Kavanaugh v. Chandler,* 255 Ky. 182, 72 S.W.2d 1003 (1934). As noted in *Kavanaugh, supra,* "It is familiar law that courts may mandatorily require a public officer to perform his duty." For other examples of this general principle, reference is made to 52 Am.Jur.2d *Mandamus* §§ 49 to 54 (2000).

Without exception, the judicial opinions and other legal writings which treat mandamus observe that it is an extraordinary remedy which compels the performance of a ministerial act or mandatory duty where there is a clear legal right or no adequate remedy at law. Specific cases are driven by the application of these legal principles to the particular facts and naturally, the results vary. We recognize that mandamus should be cautiously employed. It is not a common means of redress and is certainly not a substitute for appeal. It is different from prohibition although it shares some common elements. The term "mandamus" comes from the Latin and means "we command." Mandamus is a legal remedy but its issuance is largely controlled by equitable principles with consideration given to rights of the public and of third persons. *See Keane v. St. Francis Hospital,* 186 Wis.2d 637, 522 N.W.2d 517 (Ct.App.1994).

Mandamus compels the performance of ministerial acts or duties only. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. In some respects public officials must interpret the statutes imposing duties on them to form a judgment from the language of the statute as to what responsibilities are imposed. Such an intellectual activity does not make the duty of the officer anything other than a ministerial one. Accordingly, if the statute directs the officer to perform a particular act which does not involve discretion, the officer is required to do so and the act remains ministerial despite any doubt by the official.

Here, the only logical inferences make it sufficiently clear as to the responsibility of the jailer and nothing is left to the exercise of discretion. Thus, mandamus will lie where a statute imposes on a public officer a specific duty which he fails or refuses to perform because of an erroneous conclusion by him as to his responsibilities. The failure or refusal to perform a particular responsibility need not be expressed but may be implied when an officer fails to act within a reasonable time so as to demonstrate an intention not to perform the duties.

It is our hope and expectation that all government officials will cooperate with the purpose of harmonizing their individual responsibilities with each other so as to produce an efficient government for the public in general. It should be understood that it is not the intention of this Court to require the jailer to physically fill out the affidavit of indigency, but only to assist the inmate in seeking indigency status and with completing the paper work necessary by the judicial system and the statutes to establish indigency. Certainly, there is no supervisory authority by the jailer over the pretrial release officer. Such is not necessary because each officer has individual responsibilities that if discharged properly are congruent. In completing these responsibilities, the jailers, who may not be notaries, should arrange for the appropriate notary to be present for the execution of the affidavit.

We affirm the opinion of the Court of Appeals which held that the county jailer has a statutory duty to take the necessary steps to seek an indigency determination for inmates in his county needing medical attention. A writ of mandamus is the proper remedy to require the performance of the statutory duties in question.

The opinion of the Court of Appeals is affirmed. This case is remanded to the Harlan Circuit Court for the entry of a writ of mandamus consistent with this opinion.

LAMBERT, C.J., KELLER and STUMBO, JJ., concur.

GRAVES, J. dissents by separate opinion and is joined by COOPER and JOHNSTONE, JJ.

GRAVES, Justice, Dissenting.

I must respectfully dissent from the majority opinion on several grounds. First, I do not believe the Harlan County Jailer was under any statutory obligation to seek indigency determinations for inmates needing medical care. Second, the remedy sought does not redress the alleged harm, and other statutory safeguards obviate the need for a writ of mandamus in this case. Finally, the remedy granted by the majority is vague and unworkable. As such, I would reverse the decision of the Court of Appeals.

### A.

As the majority points out, this case turns on the issue of duty. Specifically, the pivotal issue concerns whether the Harlan County Jailer was under statutory obligation to take necessary steps to seek a determination of indigency status for each inmate in need of medical care. This Court, and other courts, have held repeatedly that a writ of mandamus is an extraordinary remedy and is to be employed cautiously. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Humco v. Noble*, Ky., 31 S.W.3d 916, 920 (2000). Furthermore, mandamus has been held to issue only where an official refused or neglected to perform a clear statutory duty. *Humana of Kentucky, Inc. v. NKC Hospitals, Inc.*, Ky., 751 S.W.2d 369, 374 (1988) (noting that mandamus will lie where a breach of duty is clear beyond dispute); *Stratford v. Crossman*, Ky.App., 655 S.W.2d 500, 503 (1983) (providing that mandamus will issue only where the duty of the defendant is clear).

The General Assembly has clearly enunciated whom it intends to prepare the paperwork for determinations of inmate indigency, and the jailer is not included therein. It may well be, as the majority explains, that the jailer is in the best position to ascertain information about inmates' economic situations. The legislature bases its decisions on experience, empirical data, and the will of the people, and this Court is not in a position to second guess the legislators. Likewise, we are not free to insert words into statutes simply because we believe they should be there. *Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 280 (1998) ("a court may not interpret a statute at variance with its stated language"); *Hatchett v. City of Glasgow*, Ky., 340 S.W.2d 248 (1960) ("where a statute on its face is intelligible, the courts are not at liberty to supply words or insert something or make additions....").

In issuing writs of mandamus, we compel officials to act in accordance with the duties clearly imposed on them by law. In the present case, the law clearly requires that a determination be made regarding the indigency of inmates needing medical care. It does not, however, impose on the jailer the duty of carrying out that task. The majority holds that statutes must be interpreted in such a way that gives effect to the legislative intent, and cites several cases to the end. *See Strong v. Chandler*, Ky., 70 S.W.3d 405 (2002); *Neutzel v. Ryans*, 184 Ky. 292, 211 S.W. 852 (1919). It is true at times that ambiguity forces courts to focus on the purposes and circumstances behind legislation. However, the statutes at issue are neither ambiguous nor inconsistent with one another. As such, the plain text of the statutes should govern and this Court should give effect to

the ordinary meaning of the words therein. *Layne v. Newberg,* Ky., 841 S.W.2d 181, 183 (1992).

Several statutes work synergistically to establish the procedure for determining indigency of inmates needing medical care. KRS 441.045, concerning inmate medical treatment, reads, "The determination of whether a prisoner is indigent shall be made pursuant to KRS 31.120." KRS 31.120(2), in turn, states, "[The person seeking indigent status] shall certify by affidavit of indigency *which shall be compiled by the pretrial release officer* . . . the material factors relating to his ability to pay in the form the Supreme Court prescribes." (Emphasis added). KRS 431.515(1) addresses pretrial release investigation and services: "All trial courts in this Commonwealth having jurisdiction of criminal causes shall provide such pretrial release investigation and services as necessary to . . . assist in the earliest possible determination of whether a person is a needy person under KRS Chapter 31." Subsection (2) of the same statute makes mention of "the court's determination of whether a person is a needy person as provided in KRS 31.120." That the legislature enlisted the services of the trial court and pretrial release officer, but opted not to mention the jailer, calls into question the majority's interpretation of the statutes. A more realistic reading suggests that the trial court and pretrial release officer are ultimately responsible for making indigency determinations for inmates. Certainly, the jailer should cooperate with these procedures, but no statute suggests that he is under any obligation to initiate and ensure completion of such a determination.

The majority dictates that "mandamus will lie where a statute imposes on a public officer a specific duty which he fails or refuses to perform because of an errone-ous conclusion by him as to his responsibilities." While this rule is sound, it has no application here. No statute imposes on the jailer a "specific duty" to take the necessary steps to seek an indigency determination for inmates in his county needing medical attention. As such, there can be no failure to perform said duty, either intentional or as a result of an erroneous conclusion.

Although no breach has occurred, the majority seeks to create one, even in the absence of supporting evidence. The majority states, "Not to require the jailer to cooperate with other officials in providing the necessary services would produce an absurd result and frustrate the system envisioned by the legislature." However, there is no indication that the jailer has been unwilling to cooperate with the pretrial release officer, who is statutorily obligated to compile affidavits of indigency. To the contrary, Healthcare itself admits that "It is not as if the Jailer and Pretrial Release Officer are strangers. They work together in many aspects involving the inmates." This being the case, the absurdity lies in the supposition that the jailer has been an obstacle to payment for medical services provided to indigent inmates. If the system envisioned by the legislature has been frustrated by the omission of a statutory duty to be imposed on the jailer, the legislature is empowered to revisit its statutes and create such a duty.

By issuing a writ of mandamus, which compels the fulfillment of a statutory duty, this Court is creating a duty by supplementing the statute with words that are not there. In so doing, the majority not only undertakes a legislative task, but also undermines the well-established rule that mandamus should not issue if the duty sought to be compelled is subject to the discretion of the officer. The United States Court of Appeals for the District of

Columbia in *Power v. Barnhart,* 292 F.3d 781, 786 (D.C.Cir.2002), recently stated, "Where an alleged duty is not … plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." (*quoting Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 218–219, 50 S.Ct. 320, 74 L.Ed. 809 (1930)). I find such reasoning sound and persuasive, as it forces courts to respect the difficulties and choices associated with work of others, work with which courts may not be entirely familiar.

Here, both the statutory duty before issuance of the writ and the statutory duty imposed by the writ are "not plainly described" or "free from doubt," and are therefore discretionary. The majority would compel the jailer to take necessary steps to seek a determination of indigency of inmates requiring medical care. Under this obligation, the jailer must decide what steps are necessary, what constitutes seeking a determination, and which inmates require medical care. Therefore, the majority has not only found a violation of a statutory duty that did not exist, it also has fashioned a remedy in mandamus very much subject to the jailer's discretion in carrying it out.

I cannot agree that the jailer was ever under a clear statutory duty to take steps toward an indigency determination on behalf of inmates needing medical care. The statutory provisions clearly assign that task to the court and pretrial release officer, and the proposed writ of mandamus serves only to confuse the issue. Because a writ of mandamus is an extraordinary remedy, it should not be employed by this Court to impose a duty on the jailer that may or may not have been contemplated by the legislature, and that clearly was not placed on the pages of Kentucky's statutes.

### B.

Healthcare requests this writ of mandamus to eliminate future problems regarding unpaid medical bills because in the past, the County has failed to file affidavits of indigency for all of its indigent inmates. The result of this oversight has been that, when billed for medical care of its indigent inmates, the County has refused to issue payment, responding that it is only responsible for inmates with an affidavit of indigency on file. In effect, Healthcare is asking this Court to impose extra duties on the Harlan County Jailer to negate any possibility that the County might shirk its financial responsibility. To that end, Healthcare contends that a writ of mandamus requiring the jailer to complete or ensure the completion of an affidavit of indigency for each inmate brought to the hospital for the purpose of receiving medical care is necessary.

The General Assembly has enacted a number of safeguards to ensure that counties are able to pay the medical bills of their indigent inmates and recover medical expenses from inmates who are treated but are not indigent. As previously noted, KRS 431.515(1) requires the trial court to offer pretrial services to needy inmates. KRS 532.354(1) allows local governments to require a reasonable co-payment from prisoners in advance of medical care, but adds that "no prisoner shall be denied medical treatment by reason of indigency." The same section then places a financial safety net for local governments, authorizing sentencing courts to order reimbursement, minus any co-payment, from prisoners found able to pay for the medical services they received while incarcerated. KRS 532.352(1) makes it clear that any reimbursement collected for services

rendered, including medical, is to be credited to the local government's sinking fund. Additionally, KRS 532.358 provides for reimbursement from prisoners upon completion of their sentences, to be paid "to the state or local government." This section further authorizes the sentencing court to use its contempt sanctions to enforce any reimbursement orders.

Putting these rules into context, it becomes obvious that the County had, or should have had, the means to pay for medical care for all of its inmates. Any debt owed to Healthcare should have been paid by the local government, which presumably had been amassing reimbursement dollars from able inmates in its sinking fund, pursuant to KRS 532.352(1). If the funds were not available, it would have been because either the number of indigent inmates treated surpassed the County's expectations and budget, or the trial courts were failing to order reimbursement from financially-able inmates. In either case, the solution rests with the local government.

Healthcare, the Court of Appeals, and the majority fail to realize that affidavits of indigency would not have created more money for operation of the system. The only consequence of having affidavits of indigency on file for all inmates who received treatment from Healthcare would be a more efficient discovery period and a faster, more responsive settlement. Having already settled, of course, Healthcare stands to gain from this writ of mandamus only an assurance that it will be able to produce proof in the future that it has treated patients for whom the County is financially responsible. The writ does not require payment for such services, and, as such, does not redress the harm allegedly done to Healthcare.

The problem in this case is ultimately one of organization and budgeting, not jail-er malfeasance, and does not warrant a writ of mandamus. The legislature has provided a clear vehicle through which local governments can care for their inmates while receiving compensation from those who can afford it. The Harlan County government is responsible for fulfilling its financial obligations, and the County, not the Supreme Court of Kentucky, must find a way to ensure that indigent inmates are cared for and that doctors get paid for their services.

### C.

Finally, the remedy presented by the writ is vague and unworkable. Both the Court of Appeals in issuing the writ, and the majority of this Court in upholding said writ, have simply clouded the explicit statutory requirements with vague semantic alternatives. This Court would have the jailer take necessary steps to seek an indigency determination for inmates requiring medical care, but fails to elaborate on what it means to "take necessary steps" or "seek a determination."

Furthermore, the practical effect of the rule is to require the jailer to obtain indigency evaluations for each and every inmate upon arrival at the jail, not merely on an as-needed basis. There are undoubtedly many inmates who require urgent medical care at some point during their incarceration. In such a situation, the jailer would be unable to inform the pretrial release officer and the trial court that an indigency determination is needed, nor would there be time to complete an affidavit and have such notarized. As those would seem to be the "necessary steps" of which the majority speaks, and the jailer would be responsible for completion thereof, he would have to choose between his "new" statutory duty to procure indigency status and his statutory duty to treat inmates humanely by getting them to the

hospital. *See* KRS 71.040. To avoid such a conflict, the jailer would necessarily have to seek indigency determinations for all inmates upon their arrival, no matter how short their stay or state of health. This likely was not the legislature's intention. Had it been so, the legislature would have avoided any mention of indigency determinations at the pretrial, sentencing, and release proceedings.

The majority also relies upon the efficiency of having the jailer initiate indigency proceedings as proof of legislative intent, since it is the jailer who has information about the inmates' prison accounts and any private insurance or other resources for payment. There is no doubt that the jailer is obligated to provide such information to those making the determination. However, KRS 31.120 requires consideration of more than simply the ability to pay for medical care in certifying an affidavit of indigency. KRS 31.120(2) sets forth other factors as well, including income, property owned, outstanding obligations, and the number and ages of dependants. As the jailer may or may not be privy to such information, I cannot conclude that he is necessarily in the best position to seek a determination of inmate indigency.

Furthermore, the majority claims to envision a world in which the jailer, the pretrial release officer, and the trial court work together to make the system run efficiently. Placing the jailer in a position in which he is responsible for the failure of others to do their jobs will likely have the opposite effect. The majority has neglected to consider the plight of the jailer when medical care is required but the "necessary steps" yield no indigency determination due to the fault of another. Though the majority's decision claims not to place the jailer in a supervisory position, practice will eventually demonstrate the flaw in such reasoning. As the Court's decision here creates more problems than it solves, the issuance of a writ of mandamus is all the more inappropriate.

CONCLUSION

As the majority attempts to fit the square peg of mandamus into the round hole of statutory interpretation, it encounters additional difficulties reconciling its proposed requirements with other statutory provisions concerning indigency determinations. Likewise, the majority has fashioned a remedy that introduces even more questions about the duties of the jailer. I would avoid these problems altogether and conform my decision to the well-established rules surrounding writs of mandamus, reserving such a drastic remedy for a more pertinent situation. For these reasons, I would reverse the Court of Appeals.

COOPER, and JOHNSTONE, J.J., join in this dissenting opinion.