COMMONWEALTH OF KENTUCKY,
Kentucky Commission on Human
Rights Appellant,

v.

PENDENNIS CLUB, INC.,
et. al.   Appellee

No. 2002–SC–0508–DG.

Supreme Court of Kentucky.

Nov. 18, 2004.

As Modified Nov. 23, 2004.

Rehearing Denied Feb. 17, 2005.

Gregory D. Stumbo, Attorney General of Kentucky, D. Brent Irvin, Assistant Attorney General, Frankfort, Morgan G. Ransdell, Staff Attorney, Kentucky Commission on Human Rights, Louisville, Counsel for Appellant.

D. Patton Pelfrey, Robert W. Dibert, Frost Brown Todd, LLC, Louisville, Counsel for Appellee, Pendennis Club, Inc.

John O. Sheller, Smith & Smith Attorneys, Louisville, Counsel for Appellee, Louisville Country Club.

Richard G. Griffith, Jeffrey J. Chapuran, Stoll, Keenon & Park, LLP, Lexington, Counsel for Appellee, Idle Hour Country Club.

Opinion of the Court by Justice LAMBERT.

Under Kentucky law, tax deductions are disallowed for amounts paid to any club that discriminates on the basis of race in its membership practices or in affording full and equal enjoyment of its benefits. The Kentucky Commission on Human Rights (KCHR) seeks a declaration that it has authority to investigate private clubs to determine if they engage in discriminatory conduct in such a manner that members would be prohibited from deducting club payments. We hold that it does. The General Assembly has expressed its intent to enable the KCHR to investigate any club—public, quasi-public, or private—to determine whether it denies full and equal enjoyment of its membership and benefits on account of race. The opinion of the Court of Appeals is reversed, and this matter is remanded for further proceedings.

The direct question before this Court is whether the Appellant, KCHR, has the statutory authority to investigate the Appellees, private clubs, to determine whether they discriminate on the basis of race. KCHR asserts such authority under a number of statutory provisions, including those disallowing deductions for amounts paid by members to any discriminatory club.

Initially, it is important to identify what this case is not about. This case is not about whether the clubs actually engage in discriminatory practices. Though possible racial discrimination is the underlying allegation of the complaint filed with the KCHR, no evidence on that issue has yet been heard. It is simply not known whether the clubs discriminate because of race. Indeed, the KCHR seeks a declaratory judgment to clarify its power (or lack of power) to investigate that question. Neither is this a case about the rights of clubs nor their members. Bona fide private clubs have the statutory right in this state to discriminate in affording the benefits of membership without fear of legal liability.[1] Private clubs engaged in expressive association also have a constitutional right to be free from "forced inclusion of unwanted person[s]."[2] Moreover, this case is not about the right of the state to disallow tax deductions to clubs that have a "whites only" or "blacks only" policy. That power is obvious. While a state may not interfere with the associational rights of truly private clubs in the absence of a compelling government interest,[3] it may refuse to approve objectionable conduct by withholding state benefits such as tax deductions. Finally, there is no doubt that the General Assembly has the power to grant the KCHR authority to investigate the activities of any club to assure that its members are not taking tax deductions that are unavailable. What this case is about is whether the General Assembly has granted the KCHR authority to so investigate. Resolution of this question depends on construction of statutes that define the breadth of KCHR's investigato-

1. KRS 344.130.

2. *Boy Scouts of America v. Dale,* 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000).

3. *See Roberts v. United States Jaycees,* 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

ry powers when complaints are filed with the agency.

It has been more than ten years since the inception of this litigation. In those ten years, the parties have been heard in three levels of the Kentucky Court of Justice, and in the United States District Court and the United States Circuit Court.

In 1991, Louis Coleman filed complaints against the Pendennis Club, Inc., the Louisville Country Club, and the Idle Hour Country Club claiming that they engaged in discriminatory membership practices. The KCHR dismissed Coleman's complaints, reasoning that the clubs were exempt from the Kentucky Civil Rights Act (Act)[4] pursuant to KRS 344.130(1). One month later, then State Representative Anne Northup wrote a letter to the state Attorney General requesting an opinion "with regard to the discriminatory practices of private clubs and organizations." She asserted that in KRS 141.010(11)(d) the legislature had granted the KCHR authority to investigate clubs to assure that the Commonwealth was not enabling discriminatory clubs to benefit from membership tax deductions. Representative Northup, the sponsor of the amendment that altered KRS 141.010, sought clarification of the effect of the amended statute. Shortly after receiving the inquiry, the Attorney General's office rendered an opinion stating that the KCHR was not prohibited from investigating private clubs, even though the clubs cannot be held liable for denying the benefits of club membership because of race.[5] Two years later, Human Rights Commissioner Mae Cleveland filed complaints alleging unlawful discrimination by the clubs. Those complaints are the genesis of this case. In June of 1994 the clubs moved to dismiss, and their motion was denied.

The clubs then sought a declaratory judgment and injunctive relief in federal court. The United States District Court ruled that KRS 141.010(11)(d)[6] did not "confer authority upon the Commission to investigate private clubs." This ruling was vacated by the United States Court of Appeals for the Sixth Circuit.[7] The Sixth Circuit held that the lower court should have abstained from ruling on the case while administrative proceedings were underway.[8] The case was remanded to the United States District Court for dismissal. The KCHR proceeded to the Jefferson Circuit Court seeking a declaratory judgment as to its power to investigate the clubs. The Jefferson Circuit Court ruled for the clubs, holding that KRS 344.130 "specifically exempted private clubs from the KCHR's domain." The Court of Appeals affirmed, agreeing fully with the circuit court's rationale. We granted discretionary review.

■ The Kentucky General Assembly established the KCHR to safeguard the

---

4.  KRS 344.010–344.990.

5.  OAG 91–197. KRS 344.120 states that it shall be unlawful for a place of public accommodation to deny its benefits to people because of the person's race. KRS 344.130 states that private clubs are not places of public accommodation, thereby removing private clubs from the purview of KRS 344.120.

6.  KRS 141.010(11)(d) is a tax statute that calls for the KCHR to make a determination as to whether clubs discriminate because of a number of listed characteristics. If a club is in fact discriminatory, then the Revenue Cabinet is directed to disallow deductions for amounts paid by members to that club.

7.  *Louisville Country Club v. Watts*, No. 97–5758 and 98–5829, 178 F.3d 1295, 1999 WL 232683, at 3 (6th Cir.1999) (per curium).

8.  *Id. See also Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

rights of citizens to be free from discrimination on the basis of race and other enumerated characteristics.[9] To fulfill its mandate, the KCHR was empowered, *inter alia*, to investigate, hold public hearings, and require answers to interrogatories.[10] To further assure that its intent was not frustrated, the Legislature enacted KRS 344.020(2), requiring a statutory interpretation that fulfills the purposes of the Act. This Court has construed the Act liberally.[11] The General Assembly has directed that all statutes be construed in a manner that furthers the objectives for which the statute was enacted.[12] Exceptions to the Act's coverage are interpreted narrowly.[13]

■ The clubs contend that the exemption in KRS 344.130 bars the KCHR from investigating private clubs because they are expressly excluded from KCHR oversight. This is a significant overstatement. KRS 344.130 states that private clubs are not places of public accommodation, resort, or amusement. Consequently, KRS 344.130 exempts private clubs from KRS 344.120,[14] but not from the entire chapter. For example, while a private club that racially discriminates in affording full and equal enjoyment of its benefits may not be held liable for damages, a private club with eight or more employees could be civilly liable if it discriminated on the basis of race in its employment practices.[15] In such a situation the KCHR would have authority to exercise its powers under KRS 344.180 and KRS 344.190,[16] and the club would be held accountable for its iniquitous employment practices. The exemption for private clubs is not all-encompassing. To so hold would be contrary to the purposes of the Act and would frustrate legislative intent.[17]

This is not a novel proposition. In *Watson v. Fraternal Order of Eagles*[18] the United States Court of Appeals for the Sixth Circuit held that the private club exemption in Title II of the federal Civil Rights Act of 1964 prohibiting discrimination in public accommodations does not preclude recovery on an alternative theory of liability, such as 42 U.S.C.1981.[19] This is sound.[20] Here, as in *Watson*, the private club exemption does not "give the clubs *carte blanche* to violate all other antidiscrimination laws."[21] Although it protects private clubs from a violation of KRS 344.120, the exemption found in KRS 344.130 is inapplicable to the issue before us.

9. KRS 344.020 and 344.170.

10. KRS 344.180 and 344.190.

11. *See Dep't of Corr. v. Furr*, Ky., 23 S.W.3d 615, 617 (2000); *Toyota Motor Mfg., U.S.A., Inc. v. Epperson*, Ky., 945 S.W.2d 413, 415 (1997).

12. KRS 446.080(1).

13. *See Kreate v. Disabled Am. Veterans*, Ky., App., 33 S.W.3d 176, 181 (2000).

14. *See supra* note 4.

15. KRS 344.040.

16. KRS 344.180 and 344.190 set forth the powers and duties of the KCHR.

17. KRS 344.020 and 446.080(1) (calling for courts to construe statutes in such a way as to advance the legislative goal).

18. 915 F.2d 235 (6th Cir.1990).

19. 42 U.S.C.1981.

20. This reasoning is especially persuasive because the Kentucky's Civil Rights Act borrowed heavily upon its federal counterpart in its design; and, in fact, the Legislature expressly provided that furthering the execution of the federal Civil Rights Act was a major purpose of chapter 344.

21. 915 F.2d at 240.

■ On the other hand, the KCHR must have statutory authority before it may investigate. KRS 141.010(11)(d) states that no deduction will be allowed for payments made to any club that has been determined by the "agency established by the General Assembly and charged with enforcing the civil rights laws of the Commonwealth, not to afford full and equal membership and full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to any person because of race." Despite this language, the clubs respond that KRS 141.010(11)(d) does not grant the KCHR authority to investigate. The clubs offer numerous arguments to escape from statutory coverage. For one, they argue that the language of KRS 141.010(11)(d) parallels the language in the public accommodation provision found in KRS 344.120. However, KRS 141.010(11)(d) distinguishes itself on two counts. First, it applies to "any club" without limitation. KRS 141.010(11)(d) does not limit the investigation to non-private clubs. It grants authority over "any club." Second, KRS 141.010(11)(d) does not limit itself to clubs that fail to afford full and equal enjoyment of its benefits and public accommodations, the concern of the exemption. While it does deal with public accommodations, it also expressly includes clubs that fail to "afford full and equal membership" because of race. Such language regarding membership cannot be found in KRS 344.120 or 344.130, and the exemption of KRS 344.130 cannot be read to grant immunity from KRS 141.010(11)(d).

Furthermore, the clubs assert that the language used in KRS 141.010(11)(d) cannot grant the KCHR independent authority to make determinations because it is drafted in the past tense. We agree that the language in this section is drafted in the past tense, but disagree as to what it says about legislative intent. The language is written in the past tense because the Revenue Cabinet cannot deny a tax deduction until the KCHR has made a determination that the club discriminates.

■ Though KRS 141.010(11)(d) does not expressly grant the KCHR authority to investigate, it does so by clear implication. The KCHR is an "agency established by the General Assembly and charged with enforcing the civil rights laws of the Commonwealth." As such, it has the power under KRS 141.010(11)(d) to make determinations. Inherent in that power is the power to investigate. This proposition was firmly established by Chief Justice John Marshall, where the Court noted that powers under the United States Constitution were not limited to what is explicitly enumerated in the text.[22] In *M'Culloch*, Chief Justice Marshall was interpreting the United States Constitution, but the same principle applies here. To supply this authority, the United States Constitution has the necessary and proper clause, and in Kentucky the General Assembly has directed interpretation of statutes to further their purpose.

In further support of this proposition, our decision in *Strong v. Chandler*[23] is informative. In *Strong* we held that the Attorney General's statutory power to institute actions to recover payments included the power to inspect documents to determine whether to bring a legal action.[24]

---

**22.** *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) (such power may be exercised by Congress whenever it becomes an appropriate means of exercising any of the powers expressly granted).

**23.** *Strong v. Chandler,* Ky., 70 S.W.3d 405 (2002).

**24.** *Id.* at 406–07.

All members of this Court joined in holding that powers granted by statute are not limited to those expressly stated, but include the means necessary to effect statutory objectives. We held it a "common sense concept," and determined that the General Assembly intended to give such authority to the Attorney General.[25] Similarly, we hold today that even though KRS 141.010(11)(d) does not explicitly create the KCHR's investigatory powers, they exist by implication. It is necessary for the KCHR to collect information before it can reach the determination authorized by statute. In other words, the power to make determinations includes the power to investigate.

In sum, KRS 141.010(11)(d) grants the KCHR authority to determine whether private clubs discriminate. If it determines that the clubs do not discriminate, the matter is closed. If it determines that the clubs in fact discriminate because of race, the KCHR must inform the Revenue Cabinet for further appropriate action. Truly private clubs have a constitutional right to discriminate because of race. The Commonwealth of Kentucky has decided, however, to refuse endorsement of such conduct by disallowing a tax deduction to members of discriminatory clubs. To assure that no such tax deduction is taken, the KCHR has been authorized to investigate.

Thirteen years ago the Kentucky General Assembly resolved that members of discriminatory clubs should have no sanctuary in the tax code. This Court has now clarified KCHR authority to progress toward fulfillment of that public policy.

Accordingly, the decision of the Court of Appeals is reversed and this cause is remanded to the trial court for further consistent proceedings.

**25.** *Id.* at 410.

COOPER, JOHNSTONE, KELLER, and STUMBO, JJ., concur.

GRAVES and WINTERSHEIMER, JJ., concur in result only.